Chester County Institution District et al., Appellants, *v.* Commonwealth et al., Appellants.

Lawler et al. *v.* Same.

Royer et al. *v.* Same.

Somerset County Institution District *v.* Same.

Argued December 6, 1940. Before SCHAFFER, C. J., DREW, LINN, STERN and PATTERSON, JJ.

54

*H. J. Woodward,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellants.

*Douglass D. Storey,* of *Hause, Storey & Lick,* and *Philip V. Mattes,* with them *Howard F. Troutman, Robert C. Haberstroh, Frank T. Butler* and *John J. Sirotnak,* for appellees, Nos. 29, 31 and 32.

*Charles H. Ealy,* with him *Solomon Hurwitz, James B. Landis,* County Solicitor, and *Thomas F. Lansberry,* for appellee, No. 30.

*Anne X. Alpern,* First Assistant City Solicitor, with her *Wm. Alvah Stewart,* City Solicitor, and *Harry W. McIntosh,* for amici curiæ.

*Jacob S. Richman,* for amicus curiæ.

*Nathan Routman,* County Solicitor, for interested party, under Rule 61.

OPINION BY MR. JUSTICE LINN, January 6, 1941:

These four appeals were argued together.

No. 29. The two plaintiffs, the Chester County Institution District and the County of Chester, acting by its Board of County Commissioners, joined by certain taxpayers of the county, filed their bill to restrain the Commonwealth, the Department of Welfare and the Secretary of Welfare from enforcing the Act of September 29, 1938, Special Session, P. L. 53, 50 PS § 1051 et seq. Relevant provisions of the Act appear in the Reporter's statement of the case.

The Chester County Institution District is a body corporate created by the County Institution District Law of June 24, 1937, P. L. 2017, 62 PS § 2201 et seq. Section 301 of that Act transferred to the plaintiff corporation the property and the obligations of the then existing county poor district of Chester County and succeeding sections of the Act provided for the performance of the public service involved. See *Poor District Cases (No. 1 and No. 2)*, 329 Pa. 390 and 410, 197 A. 334 and 196 A. 837.

The bill averred that Chester County had acquired land and had constructed on it a mental health hospital known · as Chester County Hospital for the Insane which was operated under the Act of 1937 by the plaintiff, Chester County Institution District, and prayed for an injunction restraining defendants from taking possession of the property pursuant to the Act.[1] Preliminary objections were dismissed and defendants answered. Plaintiffs contend that the Act of 1938 is unconstitutional (1) in taking the property without compensation; (2) in delegating legislative authority to the executive department; (3) as a local or special law regulating the affairs of counties; (4) as violating Article III, section 25, of the Constitution prohibiting legislation by a special session "upon subjects other than those designated in the proclamation of the Governor calling such session"; and (5) that the Act "works irreparable damage to the taxpayers of Chester County, and to the County . . ."

The learned court rejected plaintiffs' contention that the Act was unconstitutional in taking property without compensation, but agreed with them that there was unlawful delegation of legislative power and that the legislation was "local and special" in violation of Article III, section 7, of the constitution; other objections were

---

[1] The Act was considered in *Com. ex rel. Schwartz v. Bierly,* 339 Pa. 213, but no constitutional question was raised.

not passed on. Defendants have appealed from the decree granting the injunction.

1. The County Institution District Law of 1937 made a comprehensive change in the legislation theretofore providing for the care and maintenance of indigent persons whether mentally ill or not; the power to make the change was sustained in *Poor District Cases (No. 1 and No. 2)*, 329 Pa. 390 and 410, 197 A. 334, 196 A. 837. The plaintiff, Chester County Institution District, is a corporation existing and maintaining the property in question pursuant to that Act; it is a state agency performing a governmental function: *Busser v. Snyder*, 282 Pa. 440, 453, 128 A. 80; *Com. v. Liveright*, 308 Pa. 35, 77, 161 A. 697. Within constitutional limitations not involved in the case, the Commonwealth has absolute control over such agencies and may add to or subtract from the duties to be performed by them, or may abolish them and take the property with which the duties were performed without compensating the agency therefor: see *Poor District Case (No. 2)*, 329 Pa. 410, 414, et seq., 196 A. 837, containing reference to the authorities.[2] The fact that the hospitals were acquired by taxes imposed by the county does not take the case out of the rule because the taxes were and could only be imposed pursuant to authority conferred by the Commonwealth. It was property acquired for governmental purposes and cannot be considered as private property within the prohibition against taking private property without compensation.

2. We cannot agree with the learned court that there was unlawful delegation of legislative power in violation of Article II, section 1, which provides that "The legislative power of this Commonwealth shall be vested

---

[2] See, also, *Com. v. Moir*, 199 Pa. 534, 541, 49 A. 351; *Tippecanoe County v. Lucas*, 93 U. S. 108, 114; *Trenton v. New Jersey*, 262 U. S. 182, 188; *Puget Sound Co. v. King Co.*, 264 U. S. 22, 28.

in . . ." the General Assembly.[3] The challenged dele-
gation appears in section 3 of the Act.

In dealing with this point it is well to have clearly in
mind what was enacted. The legislature took from the
institution districts throughout the state, created by the
Act of 1937, supra, the power to operate hospitals for
indigent mentally ill persons and declared the Common-
wealth would thereafter perform that service, and, in
order to perform it, took from the institution districts
existing hospital properties. The Act provided for de-
tails incident to making the change. The law was com-
plete. Nothing remained except to put it in effect. The
duty of enforcement was vested in the executive depart-
ment of the state government; the Governor "shall take
care that the laws be faithfully executed . . ." Consti-
tution, Article IV, section 2. If the problem had been
simple and free from complications, the legislature
might have provided, with respect to all the mental
health hospitals involved, what it provided in section 3,
that, without waiting for the survey by the Department
of Welfare, the Commonwealth should take over the
management of such a hospital in any city of the first
class as soon as practicable after the effective date of
the act. But in some of the districts, the problem was
not simple in its elements. The record shows that con-
ditions in which these hospitals were conducted varied
and were complicated by the fact that in some districts,
institutions for the care of the poor, operated pursuant
to the Act of 1937, supra, were operated in conjunction
with the mental health hospitals. The state could have
taken over the care of the poor as well as indigent men-

---

[3] This case does not involve the provision frequently requiring
consideration of questions of delegation: Article III, section 20,
providing, "The General Assembly shall not delegate to any spe-
cial commission, private corporation or association, any power to
make, supervise or interfere with any municipal improvement,
money, property or effects, whether held in trust or otherwise, or
to levy taxes or perform any municipal function whatever."

tal health cases and the property used by the districts in caring for both classes. If that had been done, no district, for the reason stated above, could be heard to complain that property was taken without compensation. As the Commonwealth was not taking over the operation of all these institutions but only the mental health hospitals, it became necessary to provide for the application of the law as the facts might require.[4] No complaint therefore can be sustained merely because of difficulty in separating the property used for the poor from that used in the mental health cases. If the Commonwealth may take all, it may take part. These complications, not present in the case of the Philadelphia hospital, required different legislative treatment from that applied to that institution and the Act so provided. The legislature, having declared that all the property devoted to care of mental health cases should be taken, and that the Commonwealth should thereafter perform the service, might have retained all the property devoted to that purpose and there is nothing in the Act which prevents the Commonwealth from retaining all of it. It was unnecessary in this Act to provide to return any part of it.

Section 1 transferred the property to the Commonwealth, except that if mental hospitals were operated in conjunction with buildings for indigent persons, not mental patients, the property necessary for the indigent, should remain vested in the district, but that where lands and property so transferred are presently used by any institution district as a farm or woodlands in connection with buildings dedicated to the care of mental patients and indigent persons, the property should be divided according to a formula specified, and in case of

---

[4] "Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such a discretion is the making of the law." Black, C. J., *Moers v. Reading*, 21 Pa. 188, 202.

dispute, by appeal to the court of common pleas of the county. Section 3, on which the contention of unlawful delegation of legislative power is based, directs the Department of Welfare to "make an investigation and survey of the institutions hereby transferred to the Commonwealth for the purpose of determining— (1) which of the institutions are necessary, having regard to the number of persons requiring care and treatment because of mental illness, and the geographic location and capacity of other such mental hospitals; and (2) which of the institutions, having regard to existing facilities, may be operated by the Commonwealth in such a manner as to insure the proper maintenance, custody, safety and welfare of mental patients. Upon the completion of its investigation and survey, the Department of Welfare shall submit to the Governor a report setting forth its findings and recommendations, with respect to the institutions deemed necessary and suitable for the care, maintenance and treatment of mental patients and the institutions deemed unnecessary or unsuitable for this purpose. Upon receiving the report of the Department of Welfare, the Governor shall, from time to time, but not later than the thirty-first day of May, one thousand nine hundred thirty-nine, [extended by subsequent amendment] having regard to the standards of necessity and suitability hereinbefore set out in this section, determine which of the institutions shall be managed and operated by the Commonwealth as State mental hospitals and which institutions, if any, shall be closed. . . ." There is provision, then, for a survey based on two comprehensive lines: necessity and suitability, as outlined. Whether an existing institution is suitably equipped for the care of such patients requires the exercise of scientific judgment of persons qualified on the subject. The opinions of physicians, psychiatrists, architects, engineers and others will doubtless be necessary. Similar considerations will determine whether, in view of the number of such mental patients in a given district, all

the existing hospitals need be continued or whether some will be unnecessary or unsuitable.

From that survey, the Governor was directed to decide whether the institutions taken are necessary and suitable for the state's future operation. In doing that, he will not exercise a legislative function. He is given no power to determine whether or to what extent the Commonwealth shall take over the care of the indigent insane. He merely determines whether, now that the state must care for these patients, and now that the power was taken from the districts to do so, the hospitals and equipment with which the state would perform this service, are, by the legislative standard, necessary and suitable or not. It is in the interest of the hospital service and of the taxpayers throughout the state to have this public service rendered as well as the state can render it and at no greater expense than is necessary.

Assuming that these state agencies can urge this contention against the state, an examination of it, in the light of the cases dealing with delegation of legislative powers prohibited by Article II, section 1, will show there is no unlawful delegation. The established principle is that while the legislature can not delegate its power to make a law "it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend": *Locke's Appeal*, 72 Pa. 491. The rule is sometimes stated in other words: "The true distinction . . . is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter, no valid objection can be made": *Cincinnati, etc., R. R. v. Commissioners*, 1 Ohio St. 77, 88; *Union Bridge Co. v. U. S.*, 204 U. S. 364, 382; *Panama Refining Co. v. Ryan*, 293 U. S. 388, 426. Some of the cases illustrating the application of the principle may be referred to. It was held

in *O'Neil v. Insurance Co.*, 166 Pa. 72, 30 A. 943, that the Act involved was not complete in itself and could only be completed by the Insurance Commissioner to whom that power was delegated. It was not a delegation of power to determine some fact or state of things calling for the enforcement of the Act, but power to complete the Act as the commissioner, in his discretion, might think it should be. It was "An act to provide for a uniform contract or policy of insurance to be made and issued by all insurance companies taking fire risks on property within the state." It directed the commissioner to prescribe a standard form of policy and forbade the use of any other. The court said: "The effect of our cases is to settle firmly the rule that the law must be complete in all its terms and provisions when it leaves the legislative branch of the government, and that nothing must be submitted to the judgment of the electors or other appointee of the legislature except an option to become or not to become subject to its requirements and penalties." Id. at 77. There was no doubt of the power of the legislature to prescribe the form of an insurance policy, but the legislature had not done that. While declaring the need of a standard form and providing punishment for failure to use it, the Act failed to provide the form and delegated the legislative duty of preparing it to the Insurance Commissioner. Mr. Justice WIL-LIAMS said: "By its provisions the legislature says in effect to its appointee, 'Prepare just such a policy or contract as you please. We do not care to know what it is. The governor shall have no opportunity to veto it. File it in your own office and we will compel its adoption, whether it is right or wrong, by the punishment of every company officer or agent who hesitates to use it.'" Id. at 79-80. The General 44-Hour Week Law, 1937, P. L. 2766, contained a provision that "Where the strict application of the schedule of hours provided for by this section, imposes an unnecessary hardship and violates the intent and purpose of this act, the Department of

Labor and Industry, with the approval of the Industrial Board, may make, alter, amend and repeal general rules and regulations prescribing variations from said schedule of hours . . ." No standard was provided. It was held the delegation was invalid because it gave the appointee an unlimited right to set aside the statute. It was not a power merely to determine some fact or state of things upon which the law should operate, but a power arbitrarily to dispense with it: *Holgate Bros. v. Bashore*, 331 Pa. 255, 200 A. 672. In *York Rys. Co. v. Driscoll*, 331 Pa. 193, 200 A. 864, it was held that a provision in the Public Utility Law providing that "the commission, by regulation, or order, may exempt public utilities from the requirements of this paragraph as to any class of securities . . ." was an unlawful delegation for the same reason. See also *National Transit Co. v. Boardman*, 328 Pa. 450, 197 A. 239; *Kellerman v. Phila.*, 139 Pa. Superior Ct. 569, 13 A. 2d 84. In *Locke's Appeal*, 72 Pa. 491, this subject, under a provision similar to that contained in Article II, section 1, of the present Constitution, was exhaustively considered. It was held that there was no delegation of legislative power in prohibiting the sale of liquor without a license and providing that whether or not licenses should be granted should be determined by an election in the district. *In re Annexation of Baldwin Township*, 103 Pa. Superior Ct. 106, affirmed 305 Pa. 490, 158 A. 316, 158 A. 272, the question was whether, by the process adopted to annex part of a township to a city, the approval of the State Council of Education was necessary and it was argued that requiring such approval was an unlawful delegation. It was held that the provision requiring the Department to act "after due inquiry into the consequent effect upon the school districts affected, . . ." merely required determination of a fact on which the statute provided for the annexation. See also *Clark v. Beamish*, 313 Pa. 56, 169 A. 130; *Jermyn v. Scranton*, 186 Pa. 595, 601, 40 A. 972; *Am. B. Club v. Phila.*, 312

Pa. 311, 167 A. 891; *Young v. Fetterolf*, 320 Pa. 289, 182 A. 676; *Gima v. Hudson Coal Co.*, 310 Pa. 480, 165 A. 850; *Com. v. Falk*, 59 Pa. Superior Ct. 217; *Com. v. Sweeney*, 61 Pa. Superior Ct. 367; *Rohrer v. Milk Control Board*, 322 Pa. 257, 186 A. 336.

3. The objection that the Act is local and special in violation of Article III, section 7, will be considered in disposing of appeal No. 32, the Lackawanna County Institution District's case.

4. The taxpayers joining in the bill show no ground for equitable relief; there is not even an averment [5] that their taxes will be increased; if the State takes over the operation and pays the bills the taxpayer plaintiffs will probably pay less, for the purpose, than they paid before.[6] So far as the averment of irreparable damage is concerned, it is sufficient to say that the legislature had the power to pass the Act; presumably, the legislature

---

[5] "13. That the taxpayers of Chester County have continuously held and exercised a just pride in the ownership and maintenance of its own mental health hospital for its own citizens and residents, in that, said institution as maintained and operated now and heretofore is convenient and accessible to the relatives and kin of the patients of said institution and economical to the taxpayers, as well as to the kin and relatives paying for medical care and treatment of the patients thereof.

"14. That the convenience and accessibility of said mental health hospital belonging to the County of Chester, through the Chester County Institution District, has made it possible for the kin and relatives of the patients of said institution to make regular and frequent visits to the patients therein in large numbers and to their benefit and mental comfort." It is also averred that the taking, etc., "works irreparable damage to the taxpayers of Chester County. . . ."

[6] The Preamble to the Act declares: "Whereas, Experience has proven that the care and maintenance of indigent mentally ill persons, mental defectives and epileptics should be centralized in the State Government in order to insure their proper and uniform care, maintenance, custody, safety and welfare; and Whereas, Complete care of such persons in institutions operated exclusively by the State Government will effect great economies for municipal subdivisions."

gave adequate consideration to the effect on the taxpayers of the county; we find nothing authorizing the Court to say that the legislature exceeded its power on the ground suggested.

5. The last objection is that the Act is beyond the Governor's Proclamation. The Proclamation, which appears at page 3 of the Special Session Laws of 1938, convened the legislature "to consider legislation and appropriate action upon the following subjects: . . . 23. Enabling the State to care for the mentally ill and feeble-minded." Article III, section 25, of the Constitution provides: "When the General Assembly shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the Governor calling such session." This provision was considered in *Likins's Petition (No. 2),* 223 Pa. 468, 72 A. 862, and in *Com. v. Liveright,* 308 Pa. 35, 56, 161 A. 697. In them, the court applied the rule that a liberal construction may be given by the legislature to the Proclamation of the Governor. By the application of that principle the statute is within the Proclamation.

No. 32. This bill was filed by Michael F. Lawler et al., as County Commissioners of Lackawanna County and as executive and administrative officers of the Lackawanna County Institution District. Taxpayers also joined.

For the reasons stated in deciding Chester County Institution District's appeal, the conclusions reached on the questions there considered apply to this appeal. Instead of discussing, in the Chester County case, the objection that the Act is prohibited as local and special legislation, the learned court referred to its opinion in this case for the discussion of the point and concluded that the Act was inconsistent with Article III, section 7, of the Constitution; for that reason we have deferred it; it is the only point remaining for discussion in appeal No. 32.

It appears, from what has already been said at No. 29, that this is a general law applicable to all the institution districts in the state, taking from them the right to perform this public service and directing that it be hereafter performed by the Commonwealth. This appeal was doubtless selected by the learned court for the discussion of this question because of peculiar local conditions which existed in Lackawanna County in the administration of the Poor Law at the time the County Institution District Law of June 24, 1937, P. L. 2017, and two other Acts approved on the same day, 1937, P. L. 2003 and 2051, were put into operation.[7] The case was heard on bill and answer and facts submitted in a brief. We make the following quotation from the opinion [8] filed: "The Bill of complaint avers that prior to the County Institution District law of June 24, 1937, P. L. 2017, there were in Lackawanna County twenty-one independent poor districts, established by various local Acts of Assembly. Of the said twenty-one districts, three had built, established and maintained large and well-equipped institutions for the care of indigents and of mental patients: The Hillside Home and Hospital, of the Scranton Poor District; the Blakely Home, of the Blakely Poor District; and the Ransom Home and Hospital, of the Jenkins-Pittston Poor District. By this law of 1937, the independent Poor Districts were abolished, but the title of the property that had been paid for by the group of citizens and taxpayers who made up each of said Poor Districts was vested in the same group by a transfer thereof to the municipalities that had made up and comprised each respective Poor District, in proportion to the assessed valuation of each of said municipalities. Section 602 of this Act of 1937 provides as follows: '. . . Title to the real and personal property of any . . . [independent poor] district lying

---

[7] They were considered in *Poor District Case (No. 1)*, 329 Pa. 390, 197 A. 334.

[8] Reported in 48 Dauphin Co. Rep. 133.

in two or more municipalities is hereby transferred to and vested in such municipalities in proportion to the last assessed valuations of real estate for county purposes in each of them . . .'

"It was stated in the brief given to the Court, upon the argument of this case, that prior to the Mental Hospital Act of 1938, the Blakely Home, one of the three institutions involved in this Bill, was the property of and belonged to the Borough of Blakely and certain adjoining boroughs and townships. The Hillside Home and Hospital belonged in part to the City of Scranton and in part to the Borough of Dunmore. The Ransom Home and Hospital belonged in part to the City of Scranton, the Borough of Pittston, later the City of Pittston, and in part to a group of Boroughs.

"Assuming that the Commonwealth will acquire the title to the mental hospitals owned by county, city and institution districts, it would result that the Commonwealth will succeed to the fractional share of the mental department of the Ransom Home and Hospital heretofore owned by the City of Pittston, plus the fractional share represented by the ownership of the 22nd Ward of Scranton. Only one of the twenty-three Wards of Scranton participated in the ownership of the Ransom Home and Hospital. It would also be co-tenant to the Boroughs of Old Forge, Taylor, Moosic, Avoca and Hughestown, and the Townships of Jenkins and Lackawanna. As to the Hillside Home and Hospital, the ownership is divided between the Borough of Dunmore and a portion of the City of Scranton. These statements were not contradicted or denied, and while they are not part of the Bill, they tend to show the confusing situation which exists."

The learned judge noted that the title of the Act contains no reference to boroughs or townships; that the Preamble referred to the care of mentally ill in "institutions operated exclusively by the State government"; he added that the Act does not prevent boroughs and

townships from operating mental hospitals (a subject on which we express no opinion) and does not appropriate the property theretofore used by them for such purpose. He said that "boroughs and townships are thus treated differently from counties, cities and institution districts. Title to three of said hospitals [as real estate] involved in the instant case, by virtue of Section 602 of the Act of 1937, P. L. 2017, is vested in whole or in part in boroughs and townships." The learned judge was of opinion that to accomplish what the Preamble suggested, "it is necessary that all local communities be divested of the right to operate mental hospitals. This the Act fails to accomplish. Furthermore, no reason exists for taking the property of some local communities and not others . . ." He concluded that the "need for remedial legislation is as great in the excluded communities as in the included . . ." and therefore held that the statute was within the prohibition.

We all agree that conclusion cannot be supported. The County Institution District law had declared that all the mental patient hospitals involved should thereafter be operated by the Institution District. The local Poor Districts were abolished except for purposes of liquidation: Act of 1937, sec. 601, P. L. 2031.

It appears from the brief of the appellees that, while title to these properties is in the various boroughs and municipalities, "The Lackawanna County Institution District is in possession of these hospitals as tenant, under the Act of 1937, and pays rent to the various owners." The municipalities do not use these buildings.

The Lackawanna County Institution District is therefore treated by the statute like every other institution district. The principle to be applied was stated in *Seabolt v. Commissioners of Northumberland County*, 187 Pa. 318, at 323: "Legislation for a class distinguished from a general subject is not special but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real

distinctions in the subjects classified, and not on artificial [9] or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is, not wisdom, but good faith in the classification."

There is not the slightest suggestion in the record of lack of good faith in so grouping all these institution districts in the Act. We do not understand that in Lackawanna County hospitals for the indigent mentally ill are operated by anyone other than by the Lackawanna County Institution District. Only the property of that district is taken and only such title as the Institution District had.

No. 30. Appeal of Somerset County Institution District.

No. 31. Appeal of Blair County Institution District.

The principles applied in numbers 29 and 32 require that the bills filed in these cases be dismissed. The record states that in the Somerset County case the institution is self-supporting and it is said, with respect to both the Somerset County and the Blair County cases, that the manner in which the property devoted to the indigent poor and that devoted to the mental hospital is united, many of the services being common to both institutions, presents difficulty in dividing the property between the two uses in order to comply with the statute and that these considerations make the statute unreasonable as to these two districts. However strongly that argument might appeal to this Court, it is peculiarly one for the legislature, the legislative power having been determined.

It is likewise immaterial, in considering the constitutional question, that some of these institution districts

_____

[9] An example of this is found in *City of York School District's App.*, 169 Pa. 70, 32 A. 92.

have outstanding indebtedness, incurred for the pur-
poses of these hospitals, which must be met by local
taxation as provided in section 8; that was a question
for the legislature.

We find no constitutional objection to the Act, and
therefore must direct the dismissal of the bills. In each
of the cases, the record is remitted with instructions to
dismiss the bills, each party to bear its own costs.

Mr. Justice PATTERSON dissents.