Ruch, Appellant, *v.* Wilhelm, Commissioner, et al.

Argued April 9, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Frank F. Truscott,* with him *Truscott, Trinkle & Wright, John Y. Scott, Isadore Stern* and *William N. Trinkle,* for appellant.

*William M. Rutter,* Deputy Attorney General, with him *James H. Duff,* Attorney General, for appellees.

OPINION BY MR. JUSTICE HORACE STERN, September 24, 1945:

Appellant, William J. Ruch, having been summarily dismissed by the Commissioner of the Pennsylvania Motor Police [1] from membership in that body, now seeks

---

[1] The name was changed by the Act of April 28, 1943, P. L. 94, to "Pennsylvania State Police", which had been its original designation.

reinstatement and reimbursement on the ground that the Commissioner had no legal right to discharge him except upon presentation and conviction of charges in court-martial or similar proceedings.

Ruch enlisted as a private in the Pennsylvania State Police in 1920, resigned shortly thereafter, enlisted in 1924 as a member of the State Highway Patrol, and, by successive re-enlistments, served in the Patrol from 1924 to 1937 and in the Pennsylvania Motor Police from 1937 to November 23, 1938, on which latter date he was honorably discharged; he re-enlisted, however, the following day for another two years (that being the period prescribed by the Act of June 3, 1919, P. L. 366, section 7) and continued to serve until February 29, 1940; in the course of his service he was advanced in rank from private to corporal, to sergeant, to lieutenant, to captain, and finally to major. On February 16, 1940, he was summarily discharged by the Commissioner, effective February 29, 1940. He alleges that no reason for his dismissal was given, no charges were filed against him, and he was afforded no opportunity to be heard. The dismissal was not, and did not purport to be, a dishonorable discharge; it merely effected a termination of his employment by the Commonwealth. The court below dismissed his petition for a writ of alternative mandamus.

Our function in this case is merely to decide whether or not the Commissioner had a *right* to dismiss appellant without the filing or hearing of charges against him. Our decision of this question must not be construed as implying approval, from any other than a strictly legal standpoint, of the allegedly arbitrary manner in which the Commissioner exercised that right.

The members of the State Police Force are appointed by the Commissioner (Administrative Code of 1929, P. L. 177, section 205; amendatory Act of June 29, 1937, P. L. 2436). Under the common law, therefore, they are subject, like all other Commonwealth employes, to removal at the pleasure of the appointing power, either for

cause or without cause, unless there is legislative provision to the contrary:[2] *Glessner's Case,* 289 Pa. 86, 90, 91, 137 A. 166, 167, 168. They have such rights, and only such, regarding the tenure of their positions, as some statute may accord to them. Recognizing this, appellant relies upon the Administrative Code of 1929, P. L. 177, section 711, as amended by the Act of June 29, 1937, P. L. 2436, which provides that the Commissioner shall make rules and regulations, subject to the approval of the Governor, "prescribing qualifications prerequisite to,[3] or retention of, membership in the force; for the enlistment, training, discipline, and conduct of the members of the force; for the selection and promotion of such members on the basis of merit; for the filing and hearing of charges against such members, and such other rules and regulations as are deemed necessary for the control and regulation" of the force. Such rules and regulations have been duly formulated, and one of them provides that "No member of the . . . force shall be discharged, reduced in rank, or lose any pay except by order of the Commissioner, or pursuant to sentence of court-martial, approved by the Commissioner"; that is, the option is given to the Commissioner either by his own action to dismiss a member of the force (as he did in the present instance), or to refer the case to a court-martial but with the reservation that its sentence must be approved by him.

It is appellant's contention that this rule is illegal because of the statutory provision that the rules should provide "for the filing and hearing of charges", appellant insisting that this is equivalent to a mandatory enact-

---

[2] If the members of the State Police Force were to be considered "officers" within the meaning of Article VI, section 4, of the Constitution, even the legislature, of course, could not restrict the power of the Commissioner to remove them at will.

[3] Qualifications for membership are prescribed by the Act of June 3, 1919, P. L. 366, section 8.

ment that no member of the force *can be dismissed* unless charges are filed and a hearing had thereon. We are unable to give to this curt and meagre phrase any such broad interpretation. The legislature has many times evidenced its ability to enact unambiguous provisions governing the appointment, promotion and reduction of policemen and other public employes and establishing protection for them against arbitrary and unjustified dismissals. Such provisions, for example, are to be found in the Act of June 25, 1919, P. L. 581, for the government of cities of the first class, in which the entire Article XIX, as amended by the Act of July 29, 1941, P. L. 579, is devoted to that subject; also in the Act of March 7, 1901, P. L. 20, for the government of cities of the second class, which in Article III, section 1, as amended by the Act of June 15, 1937, P. L. 1761, imposes detailed and elaborate restrictions upon the appointment and discharge of policemen, and in the Acts of May 23, 1907, P. L. 206, and June 3, 1943, P. L. 826, which contain similar regulations for second class cities with respect to the method of appointing and discharging other employes in the classified service; also in the Act of June 23, 1931, P. L. 932, for the government of cities of the third class, which in Article XLIV, as amended by the Act of June 4, 1941, P. L. 83, sets up an elaborate civil service system for the police and other departments; also in the Act of June 5, 1941, P. L. 84, regulating the appointment and removal of members of the police force in boroughs, incorporated towns and townships of the first class. Then there are various statutes establishing such provisions for certain departments of the *State* government; for example, the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, Article III, for employes of the Liquor Control Board, and the Act of June 5, 1937, P. L. 1705, section 19, for employes of the State Board of Housing. Similar provisions are established by section 2504-A, added to the Administrative Code of 1929, P. L. 177, by the Act of June 24, 1937,

P. L. 2003, for employes of the Department of Public Assistance, the State Board of Public Assistance and the local boards; by the Act of December 5, 1936, P. L. (1937) 2897, section 208, for employes of the Department of Labor and Industry administering the Unemployment Compensation Law; and by the Act of August 6, 1941, P. L. 861, sections 13, 14 and 15, for employes of the Pennsylvania Board of Parole. By the Act of June 6, 1939, P. L. 250, adding section 452 to the Administrative Code of 1929, P. L. 177, a State Civil Service Commission was created, and the Civil Service Act of August 5, 1941, P. L. 752,[4] established a comprehensive system under which there was placed within the control of that body the classified service of most of the departments and boards of the state government hereinbefore referred to; incidentally it is significant that in the list of such departments and boards enumerated in Article I, section 3(c) of that act the State Police Force is not included as presumably it would have been had the legislature deemed that the members of the force were, or intended that they should be, under civil service protection. It is thus obvious that not only has the legislature seen fit to bestow such protection upon the employes of some state agencies and not others, but in each and every case where it so intended it has expressed its purpose in precise and unmistakable language.

In contrast with this extensive legislation, all that we have in the Act of June 29, 1937, P. L. 2436, is that rules and regulations should be adopted "for the filing and hearing of charges" against members of the State Police. Nothing is specifically or categorically said, as in the language of all the other acts cited, to the effect that no member shall be *dismissed* unless charges be filed and established at a hearing—in other words, that the filing and hearing of charges is a *prerequisite to dismissal*. The act says nothing whatever of the *discharge*

---

[4] Partially suspended, however, for the duration of the war by the Act of June 4, 1943, P. L. 870.

of members of the force or of the *causes* for discharge. Its language can reasonably be interpreted to mean nothing more than that the Commissioner should afford suitable opportunity for charges or complaints to be made against a member of the force by third persons [5] or by other members and for a hearing, which might be held either by the Commissioner or by someone on his behalf, to consider such charges. All that the act suggests is that some mechanism should be provided whereby charges may be aired and heard, but there is nothing from which it can reasonably be inferred that, unless such a mechanism be resorted to, the *Commissioner may not dismiss a member* from the service for what he considers good and sufficient reason. If the legislature desires to place members of the State Police Force under civil service protection it may readily do so, employing the same clear language it has used in other instances, but we cannot hold, by any justifiable extension of the power of judicial interpretation, that it has manifested such an intention merely by directing the Commissioner, with the approval of the Governor, to make rules and regulations for the filing and hearing of charges against such members. There is, indeed, a grave question whether, if such a construction of the statute were to be adopted, it would not render the constitutionality of the act extremely doubtful. Establishing restrictions on the common law right to discharge employes is a matter of substantive enactment, and the legislature cannot delegate to the Commissioner the power to make what amounts to such an enactment through the medium of "rules and regulations". Authority may be given to a government official or an administrative agency to make rules and regulations to cover mere matters of detail for the implementation of a statute, but where the statute itself

---

[5] Thus in the Act of June 25, 1919, P. L. 581, for the government of cities of the first class, it is provided in Article XIX, section 18, that charges against police officers may be filed "by any superior officer or by any citizen or taxpayer".

is lacking in essential substantive provisions the law does not permit a transfer of the power to supply them, for the legislature cannot delegate its power to make a law: *Chester County Institution District v. Commonwealth,* 341 Pa. 49, 61, 17 A.2d 212, 218. In *O'Neil v. American Fire Insurance Company,* 166 Pa. 72, 30 A. 943, an act which delegated to the Insurance Commissioner the power to prescribe a standard form of fire insurance policy was held to be unconstitutional.

In conclusion, there is an obvious reason why the remedy of *reinstatement* cannot, in any event, be granted in these proceedings. Appellant's latest enlistment would have expired November 24, 1940, at which time he would have been formally discharged as he was in 1938, and there cannot be any reinstatement for a period that has terminated. Nor can it be assumed that, even though he might have sought to re-enlist in 1940, his re-enlistment would then have been accepted;[6] he certainly had no vested right in that regard.

Order affirmed.

———

CONCURRING OPINION BY MR. CHIEF JUSTICE MAXEY:

I do not like to see any official power exercised arbitrarily, as the Commissioner exercised his power when he summarily dismissed Major William J. Ruch from the State Police Force, without specifying any charges against him or affording him an opportunity to answer charges. Such "absolutism" is not the "American way". Policemen and firemen in our cities are protected by law against summary removal without cause, and in the nation neither the President of the United States nor the Chief of Staff of the Army nor anyone else can either in peace or war *summarily* remove officers from the service or reduce them in rank. In the Army a superior officer

———

[6] One of the rules provides that members of the force discharged upon expiration of enlistment must, "if *acceptable* for re-enlistment", re-enlist within 24 hours thereafter, or forfeit continuous service pay.

can summarily remove a subordinate officer from his *command,* but he cannot summarily deprive him of his rank or of the emoluments thereof.[1]

But the question before us is not whether we approve or disapprove of Commissioner Adams' arbitrary action in this matter. The question is: Did he have the *power* so to act? It is clear to me that he did. That the power to remove an officer is incidental to the power to appoint him, is a principle as long established and as well known as is the principle of the "presumption of innocence" in criminal cases. This power to remove *does* attach to a "legislatively created office" as well as to any other office, unless the Constitution or the Legislature provides to the contrary. Practically all public offices, except those created by the Constitution, are legislatively created, and we have repeatedly held (applying both the Common Law rule and Article 6, Sec. 4 of the State Constitution) that "appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed." See *Commonwealth ex rel. v. Likeley,* 267 Pa. 310, 110 A. 167.[2]

There is no doubt about the power of the Legislature to enact laws to protect members of the State Police Force from summary removal, but unfortunately for this appellant, the Legislature did not do so. I think that when the Legislature declared in the statute invoked by this appellant that the Commissioner "shall make rules

---

[1] The Articles of War may be found in Title 10 U.S.C.A., Article 108 applying to enlisted men and 118 to officers.

[2] In *Commonwealth v. Black,* 201 Pa. 433, 50 A. 1008, we held that "a policeman is a subordinate ministerial agent or employee" and that, therefore, he can, despite Article 6, Sec. 4, be legislatively protected against summary removal by the power which appointed him. This ruling made it possible for the Legislature to protect policemen and firemen, by Civil Service Acts and other acts against summary removal, without impinging on the constitutional provision above cited.

and regulations, subject to the approval of the Governor, prescribing qualifications prerequisite to, or retention of, membership in the force; for the enlistment, training, discipline, and conduct of the members of the force, for the selection and promotion of such members on the basis of merit; for the filing and hearing of charges against such members, and such other rules and regulations as are deemed necessary for the control and regulation of the Motor Police Force" it had a nebulous intention to protect State Police officers from summary removal, *but it did not carry out its intention.* When the Legislature decreed that the Commissioner should make rules and regulations "for the filing and hearing of charges against such members", it seems to have had in contemplation the American idea of "due process of law", and it apparently intended that when any charges were made against a member of the State Police, by anybody, either by superior officers or by subordinates, or by civilians, the accused should be apprised of the charges and have an ample opportunity to meet them. But the Legislature did not carry out its "apparent intention", and for this court to supply this legislative deficiency would be to indulge in judicial legislation and would be, therefore, an usurpation of the functions of the Legislature.

When we contrast the statutory provisions just quoted with the Civil Service Acts which protect city policemen from summary removal, the inadequacy of the 1937 Act appellant invokes for his protection becomes too obvious to be judicially ignored. For example, the Act of March 7, 1901, P. L. 20, which applies to cities of the second class, provides in Article III, Sec. 1 at page 24: "No policeman or fireman appointed under this act shall be dismissed without his written consent, except by the decision of a court either of trial or inquiry, duly determined and certified in writing . . . , which court shall be composed of persons belonging to the police or fire force, equal or superior in official position therein to the accused. Such decision shall only be determined by trial

of charges, with plain specifications made by or lodged with the director of the department of public safety, of which trial the accused shall have due notice, and at which he shall have the right to be present in person." There are many other acts which protect policemen and firemen *in all our cities,* from summary removal.

Pursuant to the power given to the Commissioner by the Administrative Code of 1929, as amended in 1937, that official promulgated General Order No. 20. Section 4 of that General Order declares that: "No member of the Pennsylvania Motor Police Force shall be discharged, reduced in rank, or lose any pay except by order of the Commissioner, or pursuant to sentence of court martial, approved by the Commissioner." The section just quoted clearly gives the Commissioner *his choice of two methods* in removing a State Police officer. He can summarily order his dismissal *or* he can subject him to a court martial, the sentence of which court martial is subject to the Commissioner's approval. In the instant case the Commissioner chose the former method. In doing so he exercised a power which he unquestionably had. Whether such arbitrary power is one which should be possessed by a Commissioner of the State Police is a question for the Legislature and not for the courts to decide.

The enlistments in the State Police Force are for only two years, and the State is under no obligation to renew them. Whether or not longer enlistments, with protection against summary removal during the period of enlistment, would increase the efficiency of the State Police personnel is a matter exclusively for the determination of the Legislature. That question is not a judicial one and is certainly not before us.

Terming the two year enlistment of officers and others in the State Police a "contract", has no bearing on the determination of this case. At the most, it is a contract which under the law is terminable at will by the state's representative, the Commissioner of State Police. It is

so terminable because the law is that the appointing power may remove the appointee at will, unless the Constitution or the Legislature have decreed otherwise. There is no such decree otherwise.

It is elementary that all contracts are subordinate to the applicable law, or, to express it differently, the law of the land at a time a contract is made is a part of the contract and every other part of the contract must conform to that law. It may be unfair that Article 6 of General Order No. 20 provides that "resignation of the members of the Force will be accepted only for cause", while Article 6 of the same General Order recognizes the right of the Commissioner to discharge "by order", but since the Commissioner possessed the legislative authority to promulgate, with the Governor's approval, General Order No. 20, the unfairness of any portion of that General Order does not affect its validity.

The decision *In re Grimley, Petitioner,* 137 U. S. 147, is not at variance with the majority view in the instant case. It was decided in *that* case that an enlisted soldier cannot avoid a charge of desertion by showing that at the time he enlisted, he had passed the age at which the law allows enlisting officers to enlist recruits. It did *not* lay down any law that since an enlisted soldier is held to service for the period of his enlistment, he cannot be discharged summarily from service in the absence of an enactment protecting his tenure of enlistment.

In the case before us no statute protected the appellant's two year tenure of service and therefore he was lawfully subject to the summary removal of whose moral injustice he complains.

————

DISSENTING OPINION BY MR. JUSTICE JONES:

The ruling in this case means that the Commissioner of the Pennsylvania State Police has the absolute and unqualified right, as a matter of law, to dismiss sum-

marily any member of the force at any time without charges or a hearing and even without cause or reason.

That issue in its broadest aspect is squarely presented by the record now before us. Major Ruch, the appellant, after more than fifteen years of faithful and meritorious service as a member of the State's police force (never having received even a reprimand and having risen on his merits from the rank of private to Major), was arbitrarily dismissed by the then Commissioner, Colonel Lynn G. Adams, without cause or reason and, notably, without charges or a hearing.

The now incumbent Commissioner, as a respondent in the instant proceeding, contended both below and in this Court "that any charges, causes or reasons for the plaintiff's [Ruch's] dismissal are irrelevant and immaterial to the issues herein". With that view, both the learned court below and the majority of this Court accord. They hold that the right to dismiss a member of the State Police at will resides absolutely and unqualifiedly in the Commissioner under existing law. As I do not think that that conclusion represents a correct interpretation of the statutes by which the State Police Force was created and is regulated and controlled, I have no alternative but to dissent from this Court's judgment.

The case is, of course, important to the petitioner. Not only was he abruptly deprived (in the midst of a current term of enlistment prescribed by statute) of the emoluments and privileges of an office in which he had long served honorably and with unquestioned competency but he was also deprived of his right to prospective retirement upon completion of the required length of service whereof but a few years more remained for him to serve. At the same time, he was unjustly subjected to the ignominy of being thrown out of an office of trust without any public or private word of explanation.

But, by far the greatest significance of this Court's decision lies in the detrimental effect of the law, so declared, upon the well-being of the State Police Force

as a whole and in the incidental threat to the peace and good order of the Commonwealth from the consequent impairment of the Force. If the Commissioner may summarily dismiss at will one State policeman and not even be required to assign cause or justification for his action, he may arbitrarily dismiss the whole of the force at one and the same time. The adverse effect of the mere existence of such autocratic power in one appointed official upon the morale of a police force need only be hinted at to be realized. Nor is it any extenuation for the existence of such arbitrary power in the Commissioner to say that no Governor would long retain a Commissioner who would sweepingly and without "charge, cause or reason" dismiss all of the members of the Force. That the Commissioner can so act, and still not exceed his lawful power, is the startling reality imbedded in this Court's ruling which, as the majority take occasion to caution, "must not be construed as implying approval, from any other than a strictly legal standpoint, of the allegedly arbitrary manner in which the Commissioner exercised [his] right" to dismiss.

It seems inconceivable that the legislature will long permit the law to remain as this Court now declares it to be. But, until the situation is so corrected, the deficiency in the law and its concomitant possibility for harm will endure. I think that is especially regrettable under the circumstances. Not by the most attenuated inference can I bring myself to conclude that the legislature ever intended by its relevant enactments that the law should be as this Court now finds it to be. On the contrary, it is my opinion that, under the law as it now exists and for years has existed, no enlisted member of the State Police Force can be discharged or dismissed during the term of his enlistment except upon the judgment of a court-martial after charges and due hearing in accordance with the regulations, long since promulgated by the Commissioner (formerly Superintendent), in pursuance of the power legislatively con-

ferred upon him to make rules and regulations for the governance of the State Police.

The majority opinion rests upon two grounds: (1) that the right to dismiss a member of the State Police at will inheres in the Commissioner by virtue of the common law rule which accords to an appointor the right to remove an appointee from office at any time with or without cause or reason, and (2) that under Article 4 of General Order No. 20 (promulgated by the Commissioner on November 1, 1939) a member of the State Police may be dismissed by order of the Commissioner. In answer to the first ground it should be borne in mind that the common law rule, as to removability from appointive office, does not obtain in respect of a legislatively created office where the legislature has indicated that the appointee is removable by some method other than discharge by the appointor. Such a legislative intention, in connection with the discharge or removal of a member of the State Police, is evidenced, in my opinion, by the statutes by which we are here bound and the rules and regulations duly adopted pursuant to the legally presumed knowledge of the legislature. The second ground assigned by the majority is equally untenable. It relies upon an invalid assumption by the Commissioner of the power to discharge in open disregard of legislative intent. After all, the question involved in this case is to be determined alone by statutory interpretation. Certainly, there is no Act of Assembly which expressly authorizes the Commissioner to discharge summarily members of the State Police. Why then, merely because of the common law rule, should we impute to pertinent statute law something which the legislature could not reasonably have intended? What justification can there be for ascribing, by judicial construction, to the administrator of the State Police the power of a Praetorian Guard over the personnel of the Force?

The common law rule as to an appointor's right to discharge at will does not automatically attach to a

legislatively created office. While Article VI, Sec. 4, of the State Constitution provides, inter alia, that "Appointed officers . . . may be removed at the pleasure of the power by which they shall have been appointed," Article XII, Sec. 1, provides that "All officers, whose selection is not provided for *in this Constitution, shall be elected or appointed as may be directed by law . . . .*" (Emphasis supplied). It has been held that these two constitutional provisions are necessarily to be construed together: *Weiss v. Ziegler,* 327 Pa. 100, 104, 193 A. 642; *Milford Township Supervisors' Removal,* 291 Pa. 46, 49-50, 139 A. 623. So recognizing, the decisions of this Court have marked a clear distinction between "constitutional officers", so-called, and "legislative officers" in appraising the legislature's power to provide for removal from office in derogation of or in conflict with any right in the appointor, by virtue of the common law, to dismiss at will: see *Milford Township Supervisors' Removal,* supra.

In the *Milford Township* case, this Court said (p. 52) that Article VI, Sec. 4, ". . . is not applicable where the legislature, having the right to fix the length of a term of office, has made it determinable, by judicial proceedings, on other contingencies than the mere passage of time." That statement of the law was later quoted with approval in *Weiss v. Ziegler,* supra. See also *Commonwealth ex rel. Smillie v. McElwee,* 327 Pa. 148, 158-159, 193 A. 628; *Georges Township School Directors,* 286 Pa. 129, 133-134, 133 A. 223. In fact, in *Glessner's Case,* 289 Pa. 86, 137 A. 166, which the majority opinion cites and relies upon but which, incidentally, has no bearing on the statutes with which we are concerned, the power of the legislature to restrict or withhold an appointor's right to dismiss in respect of appointed "legislative officers" was expressly acknowledged. The *Glessner* case cites and quotes from the *Georges Township* case, supra, saying in that connection (p. 91) that it is " '*where no provision has been made by the legisla-*

*ture for the manner of removal of such [legislative] officer . . .'* ", that the common law rule is followed and applied. (Emphasis supplied).

Observe, then, how the legislature "having the right to fix the length of [the] term of office [of a member of the State Police,—a "legislative" officer] has made it determinable, by judicial proceedings, on other contingencies than the mere passage of time". If that be so, then it follows as a necessary legal corollary that the common law right to discharge at will does not attend the Commissioner as the appointor of the members of the State Police Force. In passing, it may be observed that the Commissioner is hardly to be thought of as an appointor to public office in the broad signification of that term as it is ordinarily contemplated in the law. In reality, the Commissioner is little more than a recruiting officer so far as the selection of the members of the State Police is concerned. Manifestly, his discretion is considerably restricted. Statutes prescribe qualifications for membership; training for applicants is provided; and examinations are held. From the qualified applicants, so ascertained, the Commissioner selects the candidates, who are then *"enlisted"* in the Force as required by statute. And, the obligation of the enlistee runs to the sovereign State and not to the Commissioner.

But, however that may be, the Act of May 2, 1905, P. L. 361, under which the State Police Force was originally created, provided in Sec. 4 that "It shall be the duty of the Superintendent [amended in 1937 to read Commissioner] of State Police . . . to make such rules and regulations, subject to the approval of the Governor, as are deemed necessary for the control and regulation of the police force." In discharge of that mandatory duty, rules (including *rules of courts-martial*) were duly promulgated by the Superintendent for the governance of the State Police. The rules of courts-martial, so adopted, provided with great explicitness for the filing and hearing of charges against members of the State

Police for any manner of offense, infraction or inefficiency as denounced by other rules and regulations also duly adopted and promulgated for the control and discipline of the members of the State Police. Under the latter rules and regulations, the punishment of discharge or dismissal is imposable only upon the judgment of a court-martial after charges and a prescribed hearing which comports with the strictest requirements of due process. In fact, the right of a member of the Force to a court-martial with its attendant due process is absolute under the rules and regulations even in the case of a minor offense which does not merit punishment any more severe than extra fatigue duty. In such instance, the offense is made adjudicable by a superior officer without the necessity of convening a summary court. But, if the accused is not satisfied with the superior officer's findings and recommendation in the premises, he has the right to a trial, i.e., a court-martial.

Thus did the legislature indirectly (through the required promulgation by the Commissioner of rules and regulations) provide that the tenure of a member of the State Police should be "determinable, by judicial proceedings, on other contingencies than the mere passage of time". And the rules and regulations, including the rules of court-martial, long ago adopted pursuant to direct legislative authority, have continued extant down to the present time.

It can hardly be said that the due adoption of the rules of courts-martial, as a guard against unjust and unreasonable dismissal from the State Police Force, made the legislative delegation of the rule-making power unconstitutional. Such rules, and particularly the rules of courts-martial, are peculiarly appropriate for the control and regulation of an organization such as the State Police and the well-known constant training and discipline to which its members are subject. In no event, am I aware of any reported instance in which power delegated by a legislative body has been stricken down

as excessive merely because its actual exercise *secured and vouchsafed* due process and the right to fair play under law which we are accustomed to expect from government.

What the legislature had thus done, albeit indirectly, to insure the maintenance and corporate integrity of the State Police by protecting the members thereof against capricious, vindictive or unjustifiable dismissal by any one individual, it affirmatively made the more certain when, by the amendatory Act of June 3, 1919, P. L. 366 (71 P.S. § 1192), it provided in Sec. 7 that "The members of the State Police Force *shall be enlisted* for a period of two years . . ." (Emphasis supplied).

Wholly apart from the definiteness of the term thus prescribed, an *enlistment* is a contract. As a consequence, a contractual relation, as an incident of enlistment, has been held to exist between the parties, i.e., the government on the one hand and the enlistee on the other. See *In re Grimley,* 137 U.S. 147, 150. See also *Smith v. United States,* 292 U.S. 337, 341. The assured tenure of office for a definite term, which an enlistment supplies, subserves the governmental purpose. Cf. *Humphrey's Executor v. United States,* 295 U.S. 602, 625-626. The status of an enlistee differs from that of an appointed public officer in a number of respects. Among other things, an enlistee is without any right to abandon his position at will. General Order No. 20, upon one of whose Articles (No. 4) the majority of this Court rely in a particular yet to be discussed, provides in Article 6 that "Resignation of members of the [State Police] Force will be accepted *only for cause, subject to the approval of the Commissioner."* (Emphasis supplied).

The above is by no means intended to suggest that the sovereign may not terminate an enlistment before the expiration of the specified term. It may. But, it takes positive legislative action to effect such a result. It may not be accomplished on the assumed basis of a common law rule which does not pertain to *enlisted* of-

ficers. There is no common law rule, of which I am aware, that an *enlisted* appointee may be discharged at the will of the appointor. Nor is there any statute in Pennsylvania which even by implication empowers the Commissioner to discharge at will an enlisted member of the State Police Force.

In the case of federal enlistees, the 108th Article of War provides that ". . . no enlisted man shall be discharged from said service before his term of service has expired, except by order of the President, the Secretary of War, the commanding officer of a department, or by sentence of a general court-martial." 41 Stat. 809, 10 U.S.C.A. § 1580. That provision (formerly Article 4) has been in the Articles of War since 1806 without substantial change (*Reid v. United States,* 161 Fed. 469, 471) and is still extant. But, be it noted that the Articles of War, including the one above referred to, were *congressionally* enacted. "The articles of war constitute the only statutory declaration concerning discharges from the military [i.e., *enlisted*] service" of the federal government. *Reid v. United States,* supra. Thus, do the President, the Secretary of War and the commanding officer of a department get their power to terminate an enlistment by virtue of direct legislative authority. Yet, the President, as the appointing power, may dismiss at will an appointed public officer without any express legislative authority: see *Myers v. United States,* 272 U.S. 52, 119, later restricted in *Humphrey's Executor v. United States,* supra, where the appointee had quasi-legislative and quasi-judicial functions to perform. Accord, *Commonwealth ex rel. Attorney General v. Benn,* 284 Pa. 421, 131 A. 253. Enlisted status denies its subjection to the power of summary dismissal except that power be statutorily constituted.

So far I have endeavored to show that the Commissioner of State Police lacks any power, either under statute or under the common law, to dismiss a member of the Force at will. That brings us to the second ground

advanced by the majority in support of their conclusion.

The power legislatively conferred on the Superintendent (now Commissioner) by the Act of 1905, as hereinbefore mentioned, "to make such rules and regulations, subject to the approval of the Governor, as are deemed necessary for the control and regulation of the police force" was reenacted verbatim as a part of Sec. 711 of the Administrative Code of 1929. By Act of June 29, 1937, P. L. 2436, the legislature amended Sec. 711 of the 1929 Act by providing that "The Commissioner of Pennsylvania Motor [now State] Police . . . shall . . . make rules and regulations subject to the approval of the Governor, [1] prescribing qualifications prerequisite to, or retention of, membership in the force; [2] for the enlistment, training, discipline, and conduct of the members of the force; [3] for the selection and promotion of such members on the basis of merit; [4] for the filing and hearing of charges against such members, and such other rules and regulations as are deemed necessary for the control and regulation of the Motor Police Force." It will be noted that the 1937 amendment in no way restricted or enlarged the Commissioner's power to make necessary rules and regulations. His power in such regard was the same after the amendment of 193ᵣ as it had been continuously ever since the Act of 1905. All the 1937 amendment did was to specify in the four particulars, as above numbered, certain matters which *should* be covered by such rules and regulations. So far as the direction to make rules and regulations "for the filing and hearing of charges against such members" is concerned, that provision was but confirmatory of what had already been done by the Superintendent (Commissioner) under the power to makes rules and regulations. See General Order 22, the Rules of Courts-Martial applicable to the Pennsylvania State Police.

In asserted compliance with the mandate to make rules and regulations as provided by the Act of 1937, the Commissioner on November 1, 1939, promulgated Gen-

eral Order No. 20. Article 4 thereof provides that: "No member of the Pennsylvania Motor Police Force shall be discharged, reduced in rank, or lose any pay except *by order of the Commissioner,* or pursuant to sentence of court-martial, approved by the Commissioner." (Emphasis supplied). The majority of this Court say that by virtue of the foregoing Article the Commissioner has the right to discharge an enlisted member of the State Police Force without cause or reason. The ineffectuality of the authority to that end in Article 4 lies in the fact that the Commissioner, and not the legislature, created it. In this connection, is it not strange that, if the Commissioner enjoyed throughout, by virtue of the common law, the power to dismiss at will a member of the Force, he should find it necessary in 1939 to arrogate to himself such power by the expedient of promulgating a new regulation? The fact is that, from the time of the creation of the State Police Force, there has never been an intimation in any of its rules or regulations, and certainly in no statute, that the Commissioner had the power to dismiss a member at will *save* for the single interpolation in Article 4 of General Order No. 20 promulgated by the Commissioner on November 1, 1939.

Authority to discharge an enlisted member of the State Police Force, during the term of his enlistment, could be conferred upon the Commissioner only by express legislative declaration to that effect. To permit the Commissioner, under the guise of promulgating rules and regulations for the administration of the State Police, to affect and impair substantive rights of members of the Force (created by contract of enlistment as required by statute) would constitute an unconstitutional delegation of legislative power. Nothing less than an express statute could take away or provide for the taking away of such rights and, then, only as to prospective enlistments. In the case of federal enlistees, since 1806 they have entered into their federal contracts of enlistment bound with knowledge of the provisions in

the existing Articles of War as to the terminability of their enlistments. But, as yet, there is no statute in Pennsylvania which specifically authorizes anyone to abrogate summarily the contract of an enlisted member of the State Police Force. To give to the statutory provision, which directs the Commissioner to "make rules and regulations", the scope for which he contends would be to render the exercisable authority unconstitutional and, that, we are forbidden to do by a well-established rule of construction: *Pennsylvania Company, etc. v. Scott,* 346 Pa. 13, 19, 29 A. 2d 328; *Hotel Casey Company v. Ross,* 343 Pa. 573, 578, 23 A. 2d 737; Statutory Construction Act of May 28, 1937, P. L. 1019, Art. IV, Sec. 52, 46 P.S. § 552(3).

But, beyond that, the provision in Article 4 of General Order No. 20, which purports to authorize the Commissioner to discharge summarily a member of the State Police Force, transgresses the authority legislatively conferred upon him to "make rules and regulations". Nowhere in such authorization (including the Act of 1937) is there any suggestion that the legislature thereby intended that the Commissioner could assume the power to abrogate a contract of enlistment at will.

True enough, the Commissioner is the head of an administrative agency. Being such, it was competent for the legislature to authorize him to make rules and regulations for necessary administrative purposes. See *Manhattan General Equipment Co. v. Commissioner of Internal Revenue,* 297 U.S. 129, 134; *Miller v. United States,* 294 U.S. 435, 440, and cases there cited; *United States v. Grimaud,* 220 U.S. 506, 517. It is never to be presumed, however, that the legislature intends to delegate power to create, affect or impair substantive rights. Only the legislature itself can act to that end and, then, necessarily subject, of course, to pertinent constitutional limitations. As a corollary to the rule which forbids a delegation of legislative power to an administrative agency (see *Hotel Casey Company v. Ross,* supra,

at p. 578), it is axiomatic in the body of law, which has developed with the wide extension of administrative agencies in this country, that regulations promulgated by such agencies must conform strictly with the laws creating and empowering the agencies; must be reasonable; must be designed to carry out the purpose of the cognate laws; and must not assume to amend them: *Stark v. Wickard,* 321 U.S. 288, 309; *Manhattan General Equipment Co. v. Commissioner of Internal Revenue,* supra; *Campbell v. Galeno Chemical Company,* 281 U.S. 599, 610; *International Railway Company v. Davidson,* 257 U.S. 506, 514; *United States v. Symonds,* 120 U.S. 46, 49. The regulation upon which the Commissioner relies as authority for his summary dismissal of Ruch offends against each of the above specified requirements.

The Commissioner derived no authority from Article 4 of General Order No. 20 to discharge summarily any member of the State Police for any cause. His only recourse in such regard is to file charges against an offending or undesirable member and have a court-martial adjudicate the matter under the rules and regulations applicable to the State Police.

The argument that the amendment of 1937 was insufficient to set up a civil service for the State Police rests upon a gratuitous assumption. Of course, it was not sufficient for that purpose and for the very good reason that it was not intended to do so. There was no occasion to provide civil service for the State Police. The legislature, having authorized the Commissioner to make rules and regulations for the control and regulation of the State Police, is presumed to know what rules were extant pursuant to that authority and that, under the rules and regulations so adopted and promulgated, there was a provision for the filing of charges against a member of the State Police and for a hearing thereon before a court-martial. To those in *enlisted* governmental service, court-martial affords due process of law. Cf. *United States ex rel. French v. Weeks, Secretary of War,* 259

U.S. 326, 335; *Reaves v. Ainsworth, Major General,* 219 U.S. 296, 304. Furthermore, the argument that the legislature has provided civil service wherever it thought it was needed proves too much. Since the legislature has deemed it necessary to protect by civil service the tenure of the members of various administrative bodies of the State as well as the policemen of all cities of all classes, is it reasonable to presume that it intended to leave unprotected the members of the State Police Force? In reality, I think that they have been and are protected by the rules of court-martial duly made applicable to that body pursuant to legislative authority.

As the decision of this Court is placed upon the power to discharge at will, which the majority attribute to the Commissioner, it is unnecessary to consider the possible additional basis for affirmance suggested in the majority opinion. It may be pointed out, however, that, to hold that mandamus does not lie because the period of the term of enlistment, current at the time Ruch was dismissed, had expired when he sought the remedy, would be to render effective, and thereby honor, the illegal and unwarranted action by which he was deprived of his membership in the State Police. And, that, I do not think the law favors or requires. Ruch, having been seriously harmed in his personal and property rights by the unlawful and arbitrary dismissal, is entitled to reinstatement. His right to mandamus (the appropriate remedy) to effect that result is clear. The extent of the relief possible under the circumstances is a matter which a court could properly mold with entire justice to both the State and the petitioner. He could at least be restored to the status and the portion of the term unexpired at the time of his wrongful dismissal.