COMMONWEALTH, ex rel. LYONS, *v.* PAINTER et al.

An act of Assembly, directing the county commissioners to determine the exact site for, and to erect the public buildings in the new county town, if a majority of the voters of the county shall vote in favour of the change, is constitutional.

*April* 2. Petition for a mandamus. The question arose under an act of Assembly, passed in 1847, providing that the qualified electors of the county of Delaware should determine by ballot, at the next general election, whether the seat of justice should be continued, as at present, or be removed to another place, and directing, that in the event of there being a majority for the change, the commissioners should determine the exact location for the new public buildings, and proceed to erect them. The petition

set forth that there was a majority for the change, and prayed a mandamus accordingly. Two of the commissioners returned they were willing to act if required by law, but that doubts had been expressed as to the constitutionality of the act. They therefore submitted themselves to the order of the court.

*Clarkson*, for the relators.—The doubt is founded on 6 Barr, 507. But that case is inapplicable, as was ruled in 8 Barr, 391, at Harrisburg. Such acts are common; and, as the right to refer such questions to commissioners, courts, or juries, has never been doubted, it is clear they may be referred to the people at large. There are numerous similar acts; no less than five at the session of 1842. Such was also the act to retrocede a portion of the District of Columbia, which shows the opinion of Congress and the legislature of Virginia: Act 1845–6, p. 35.

*G. W. Biddle* and *J. M. Read*, for the commissioners.

*April* 19. COULTER, J.—The act of Assembly of the 7th day of April, 1848, entitled "An act concerning the removal of the seat of justice in Delaware county," contains a proviso to this effect :—"That the act shall not go into operation until a decision shall be obtained from the Supreme Court, on the validity of the previous act of the legislature on the same subject, passed the 3d day of March, A. D. 1847, by which the removal of the seat of justice for the said county was submitted to a vote of the qualified electors of said county, at their general election in October of the same year."

We may presume that the doubt in the minds of the people of Delaware county, as to the validity of said law, which arose after the determination of the question at the election, and also in the mind of the legislature, was superinduced by the decision of this court, in the case of Parker v. The Commonwealth, 6 Barr, 507, made at Pittsburgh, in November, 1847.

In order to obtain the opinion of this court, contemplated and suggested in the act of 1848, before referred to, the relators applied for a writ of mandamus against the commissioners of the county, who are the respondents, commanding them to proceed and execute the law of 1847.

The respondents set forth the act of 1848, submitting the question to this court, and the case of Parker v. The Commonwealth, already referred to, as the reasons why they did not carry out the act of 1847.

Waiving all objections on technical grounds or otherwise, as to the mode in which the matter is submitted to the court, we proceed to express an opinion on the subject, which is invoked by the respondents as well as by the legislative will.

The case on hand is strongly assimilated to the case of The Commonwealth, ex rel. Phillipi v. The Judges of the Court of Quarter Sessions of Lebanon County, 8 Barr, 391, decided since the case of Parker v. The Commonwealth; in which it was ruled, that an act of the legislature directing an election to be held within the township interested, by the qualified electors, for the purpose of determining by ballot whether a newly erected township, established by the Quarter Sessions, and the proceedings affirmed by the Supreme Court, should be continued or annulled, was valid and constitutional. The learned judge who delivered the opinion observed:—"But if the legislature can authorize the courts to decide questions of this character, they can authorize the people primarily to do so."

A strong illustration of the faculty of the legislative power in this respect may be found in the act of Congress of the 9th of July, 1846, submitting the question of the retrocession of the county of Alexandria, in the District of Columbia, to the state of Virginia, to a vote of the qualified electors of that county. Virginia had previously enacted a law signifying her willingness to take back the county, whenever the same should be receded by the Congress of the United States. Congress enacted the law of 9th July, 1846, submitting the question to the qualified electors, and providing the machinery for the election; and enacting that, if a majority of the electors shall be against accepting the provisions of the act, it shall be void and of no effect; but if a majority of votes shall be in favour of accepting, then it shall be in full force. And in that event, it shall be the duty of the president to inform the governor of Virginia of the result of the election, and that the law is consequently in force.

Many of the most profound constitutional lawyers in the Union were in Congress at that time; and the state of Virginia never hesitated to accept the retrocession, because the Congress of the United States delegated to the people the decision of the question. This act, under all the circumstances, must therefore be considered as high authority and a precedent in the development of the constitutional functions of the legislative power. This court is of opinion the case of Parker v. The Commonwealth does not reach or cover the case in hand. We are of opinion that the act of 3d

March, 1847, submitting the question of removal of the seat of justice to a vote of the qualified electors of the county, was constitutional and valid; and that judgment be rendered for the relators, and that a peremptory mandamus be issued against the respondents, with costs.