## H. D. O'Neil et al., Appellants, *v.* Am. Fire Ins. Co.
## H. D. O'Neil et al., Appellants, *v.* Artisans Ins. Co.

[Marked to be reported.]

*Constitutional law—Delegation of legislative power—Fire insurance—Standard policy—Act of April 16, 1891:*

The act of April 16, 1891, P. L. 22, entitled " An act to provide for a uniform contract or policy of insurance to be made and issued by all insurance companies taking fire risks on property within the state," and directing the insurance commissioner to prescribe a standard policy of insurance, and forbidding the use of any other, is unconstitutional, inasmuch as it involves an unauthorized delegation of legislative power.

It seems that the legislature may itself prescribe a form of contract of insurance.

Argued Nov. 9, 1894. Appeals, Nos. 306 and 307, Oct. T., 1894, by plaintiffs, from orders of C. P. No. 2, Allegheny Co., Oct. T., 1893, Nos. 153 and 154, entering judgments of nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on policy of fire insurance. Before EWING, P. J.

At the trial it appeared that, on Nov. 2, 1892, each of the defendant companies executed and delivered to plaintiffs a policy of insurance on a certain building in McKeesport—one for $1,600 and the other for $500. These policies were in the standard form prescribed by the insurance commissioner under the act of April 16, 1891, P. L. 22. On Nov. 6, 1892, while the policy was in force, the building was entirely destroyed by fire, being a total loss. Plaintiff gave his policy in evidence and then offered the testimony of witnesses for the purpose of showing a waiver by the company of the condition in the policy relating to proofs of loss and an appraisement of the value of the property destroyed. These offers were objected to upon the ground that the conditions were prescribed by a statute and could be waived only in the manner in which the statute provided.

The court entered a compulsory nonsuit, saying:

" The motion is sustained, and compulsory nonsuit is entered with leave to plaintiffs to move the court in banc to take off the nonsuit.

" The motion that has been made is one that asks the court to say that, taking all the testimony that the plaintiffs have given to be true, with all the proper inferences that can be drawn from it, they cannot recover.

" The contract of insurance is made on a policy in each case that is prescribed by the state and state authorities.   It is the same policy that is in force in the state of New York and has been for some years.   I have grave doubts myself as to the constitutionality of a part of this act of assembly, viz: putting into the hands of the insurance commissioner power that it is even questionable whether the legislature has to legislate.

" The act of assembly that has been passed gives the insurance commissioner power to prescribe a form of policy which every insurance company in the state, or doing business in the state, is bound to adopt under pain of a penalty, and every man getting insurance has to take that form of policy.   If it be a bad form,.probably the best thing to do is to enforce the act, and have the attention of the public called to it, so that it can be changed or repealed.   I have myself a very decided opinion in regard to it.   I look upon it as infamous.

[" In the past, companies doing business in the state, many of them not having offices here or not resident, were in the habit of putting clauses in their policies which virtually made an insurance policy only security if the company saw fit to pay it— unreasonable, unjust, inequitable provisions, and provisions so many of them that hardly any ordinary lawyer who was not an expert in the insurance business could get the run of all of them.

" The courts of this state had held those provisions to be void in many cases, on the ground that virtually they were a trick of the company to hoodwink and cheat honest people insuring their property.   The evil was so great that legislation seemed to be required, and the legislature passed an act in 1891 authorizing and directing the insurance commissioner of this state to provide a form of policy which all insurance companies were bound to adopt.   He did so, and they have to follow it or run the risk of incurring penalties.   Not one of them has yet undertaken, I believe, to ignore it.

" The conditions put in that policy go beyond almost any policy that ever was exhibited in the courts before.   Numerous

provisions were put in that the court had declared void because they were so unjust and inequitable. The basis of the policy seems to be an assumption that every man who insures his property is necessarily a rogue, and will undertake to cheat the company, and that the poor, honest companies must be protected against the villainy of the people who pay their money and get insurance.

" It seems to be framed in the interest of dishonest companies and insurance brokers, and puts an honest insurance company and honest officers of a company at a very great disadvantage, but we hold for the present that it is a valid law and a valid form of policy, and that its provisions are to be enforced when they come into court, and until the Supreme Court declares that they are not to be enforced—not to be held to mean what they say—every man ought to understand that when he has an insurance policy upon his property it is an exceedingly poor security. He will get paid if the company sees fit to pay him."

The court subsequently refused to take off the nonsuit.

*Error assigned* was above order.

*W. .B. Rodgers, J. H. Beal* with him, for appellants.—The power exercised by the insurance commissioner, being a delegated one, the terms of the contract prescribed by him must be reasonable, otherwise they are void; and the provisions as to proofs of loss, appraisal and waiver are void because they are unreasonable and have been so held by this court: Pittsburg's Ap., 115 Pa. 4; Baltimore v. Radecke, 49 Md. 217; Minnesota v. R. R., 134 U. S. 418.

The act of April 16, 1891, P. L. 22, is unconstitutional and void. It is an attempt by the legislature to delegate to the insurance commissioner the power to make the law on this subject: Art. 2, § 1, Const.; Cooley, Const. Lim., 6th ed., p. 137; Com. v. Parker, 6 Pa. 507; West Phila. Case, 5 W. & S. 281; State v. Comrs., 37 N. J. L. 12; R. R. v. Comrs., 1 Ohio St. 77; State v. Young, 29 Minn. 474; Sutherland on Stat. Const. § 68.

The act is unconstitutional because it attempts to oust the jurisdiction of the courts and deprive the parties of a trial by jury: Const., art. 1, § 6; Ib., art. 5, § 26; People v. Haws, 37 Barb. 440; Mentz v. Ins. Co., 79 Pa. 478; Assurance Co. v.

Hocking, 115 Pa. 407; Home Ins. Co. v. Morse, 20 Wall. 445; Barron v. Burnside, 121 U. S. 186.

The act is unconstitutional because it is a special law changing the rules of evidence in judicial proceedings: Constitution, art. 3, § 7.

The act is unconstitutional because the legislature has no right to prescribe such a form of contract to be made by parties sui juris as to their own private business: Const., art. 1, § 1; Waters v. Wolf, 162 Pa. 153; Godcharles v. Wigeman, 113 Pa. 437; Com. v. Perry, 155 Mass. 117; People v. Frorer, 14 Ill. 171; Millet v. People, 117 Ill. 294; Coal Co. v. People, 147 Ill. 66; Ry. v. Wilson, 4 Tex. Ap. 322; State v. Coal Co., 33 W. Va. 188; State v. Goodwill, 33 W. Va. 178; People v. Gillson, 109 N. Y. 389; Jacobs's Case, 98 N. Y. 98; Kuback's Case, 85 Cal. 274; Peddler's License, 22 W. N. 35; Com. v. Vrooman, 3 Dist. R. 340.

*Edwin Z. Smith, J. S. & E. G. Ferguson* with him, for appellees.—The act of 1891 is not an improper delegation of legislative power: Sutherland on Statutory Construction, pp. 68, 69; Wayman v. Southard, 10 Wheat. 1; Minnesota v. Ry., 38 Minn. 298; R. R. v. Smith, 70 Ga. 694; Com. v. Quarter Sessions, 8 Pa. 394; Moers v. Reading, 21 Pa. 202; Reed v. Ins. Co., 138 Mass. 572; Armstrong v. Ins. Co., 22 Ins. L. J. 795; Moore v. Ins. Co., 23 Ins. L. J. 466; Bourgeois v. Ins. Co., 86 Wis. 402.

The case of Godcharles v. Wigeman, 113 Pa. 437, and the other authorities cited on this point by appellant, all apply to cases where attempts were made by legislative enactment to interfere with persons sui juris in the making of their own business contracts. The legislature has a right to regulate the business: Com. v. Vrooman, 164 Pa. 306.

The use of the standard policy being compulsory on companies, the former rule of interpretation—that certain requirements of the policy as to proofs of loss and appraisement might be held to be waived by the acts of the company, being for their benefit—cannot be applied to the contract under consideration : Mitchell v. Ins. Co., 21 Ins. L. J. 1003; Armstrong v. Ins. Co., 22 Ins. L. J. 795; Moore v. Ins. Co., 23 Ins. L. J. 466; Quinlan v. Ins. Co., 133 N. Y. 356; Bourgeois v. Ins. Co., 86 Wis. 402; Shapiro v. Ins. Co., 22 Ins. L. J. 310; Wierengo v. Ins. Co.. 98 Mich. 621; Reed v. Ins. Co., 138 Mass. 572.

OPINION BY MR. JUSTICE WILLIAMS, Jan. 7, 1895:

The compulsory nonsuit entered in this case must stand or fall with the act of 16th April, 1891, P. L. 22, entitled "An act to provide for a uniform contract or policy of insurance to be made and issued by all insurance companies taking fire risks on property within the state." The action is upon a policy in the form prepared by the insurance commissioner under the directions of that act. At the trial the plaintiff gave his policy in evidence and then offered the testimony of witnesses for the purpose of showing a waiver by the company of the conditions in the policy relating to proofs of loss and an appraisement of the value of the property destroyed. These offers were objected to upon the ground that the conditions were prescribed by a statute and could be waived only in the manner which the statute provided. The learned judge of the court below assumed, with evident reluctance, the constitutionality of the act of 1891, sustained the objection to the evidence offered, and left the plaintiff to stand upon the letter of what was thus held to be a statutory form of contract. The compulsory nonsuit was the logical result. This appeal brings us face to face with the question whether the provisions of this policy are to be construed as those of a voluntary contract entered into by the parties, or as the requirements of a positive statute imposed upon the parties by the lawmaking power.

The answer to this question must depend on whether the act of 1891 is a valid exercise of legislative power. The words legislative power mean the power or authority, under the constitution or frame of government, to make, alter and repeal laws: 13 A. & E. Ency. L. 272. Under the constitution of this state this power is vested in, and must be exercised by, the legislative branch of the government: Parker v. The Commonwealth, 6 Pa. 507. It is a power that cannot be delegated. This principle was stated with great vigor by Chief Justice GIBSON, in the borough of West Philadelphia, 5 W. & S. 283, in these words : "Under a well-balanced constitution the legislature can no more delegate its proper function than can the judiciary." It is suggested that Parker v. The Commonwealth is an overruled case. While this is true it is equally true that the cases that overrule it distinctly recognize the principle on which it was decided. They deny only the applicability of that prin-

ciple to the facts then before the court.   The question raised
in Parker v. The Commonwealth was the constitutionality of
a local option law, and it was held to be unconstitutional because
the reference of the question of its going into effect in a given
locality was thought to be a delegation of legislative power.
In subsequent cases, and particularly in Locke's Appeal, 72 Pa.
491, it was held that, inasmuch as the law with all its provi-
sions and its penalties was complete when it left the legislature,
and the only question submitted to the electors of the locality
was whether they desired this law to become operative in the
subdivision of the state in which they lived, such submission
did not amount to a delegation of legislative power.   No pro-
vision or requirement of the law was left to be supplied in
order to make it complete in all its parts, but the vote of the
electors served to give expression to their wish in reference to
the subjection of the locality they represented to its already
finished provisions.   It has frequently been held that local
questions may be submitted in this manner to those who are
to be directly affected by their decision.   The division of a
county is such a question and a law submitting the question
to a popular vote and making the division depend on the result
of the vote was sustained in Smith v. McCarthy, 56 Pa. 359.
So is the location of the county seat: Commonwealth v. Painter,
10 Pa. 214.   So also is the granting of licenses to sell intoxi-
cating drinks: Locke's Appeal, 72 Pa. 491.   Such laws are in
form and in substance laws in presenti to take effect in futuro
upon the ascertainment of the wish of those most directly af-
fected thereby.

The effect of our cases is to settle firmly the rule that the
law must be complete in all its terms and provisions when it
leaves the legislative branch of the government, and that noth-
ing must be submitted to the judgment of the electors or other
appointee of the legislature except an option to become or not
to become subject to its requirements and penalties.   In the
light of this line of well considered cases let us examine the act
of 1891 in order to get its provisions before us.   Section first
declares " That the insurance commissioner shall prepare and
file in his office on or before the fifteenth day of November, 1891,
a printed form in blank, of a contract or policy of fire insurance,
together with such provisions, agreements or conditions as may

be indorsed thereon or added thereto and form a part of such contract or policy; and such form when filed shall be known and designated as the standard fire insurance policy of the state of Pennsylvania." Section second provides among other things for the incorporation of the provisions of the standard policy into the contracts of insurance made on property within the state by foreign insurance companies. Section third makes the use of this standard form of policy obligatory on all fire insurance companies doing business in this state from and after the first day of May, 1892. Section fourth provides the penalties to be imposed upon any insurance company, its officers or agents or either of them, for failure to comply with the requirements of the act or with the form of policy which the insurance commissioner may devise and file in his own office.

It may be well to say in this place that we do not now deny the power of the legislature to direct the form of a policy of insurance against fire. We held in Commonwealth v. Vrooman, decided in October last, that the business of insurance against loss by fire was, by reason of its nature, its magnitude, and the temptation to improper practices which it presented, a proper subject for legislative regulation and control. The power to prohibit technical and unjust conditions intended to open the way to vexatious litigation and to defeat the just expectations of the insured, belongs to the police control which Commonwealth v. Vrooman asserted. The question is not therefore one of power over the subject, but of the manner in which the conceded power must be exercised. Upon this question our judgment is with the appellant for reasons that we will state as concisely as possible and without any attempt at elaboration.

The act of 1891 is a delegation of legislative power because,

First. The act does not fix the terms and conditions of the policy the use of which it commands.

Second. It delegates the power to prescribe the form of the policy, and the conditions and restrictions to be added to and made part of it, to a single individual.

Third. The appointee clothed with this power is not named but is designated only by his official title. He is the person who may happen to be insurance commissioner when the time comes to prepare the form for the standard policy for insurance against fire.

Fourth. The appointee is not required to report his work to the body appointing him but simply to file in his own office the form of policy he has devised. It does not become part of the statute in fact, is not recorded in the statute book, and no trace of it can be found among the records of either branch of the legislature.

Fifth. The act was approved in April, 1891. The appointee had until the following November to prepare and file the form of policy over which when filed the legislature had no control whatever. They did not consider, they had no knowledge of, the form which they required all companies doing business in the state to adopt and the use of which they compelled by heavy penalties.

The elementary books divide a statute into three parts, the declaratory, the directory and the vindicatory. In this statute the legislature furnished the first and third. It delegated the preparation of the second. It declared in effect the need of a standard form of policy. It provided punishment for the failure to use such form when provided; but it turned the preparation of the form over to its appointee and gave him six months in which to do his work and file a copy of it in his own office. Whoever might be interested in knowing the directory part of the statute and understanding what it was he was required to do, had to go beyond the act of assembly and inquire of the appointee of the legislature what it was he had filed in his own office, of which the people of the commonwealth were bound to take notice at their peril.

It will not do to say that the preparation of the form was an unimportant matter of detail, or an act partaking of an executive or administrative character. It was the sole purpose of the act. It was the only subject named in its title. The enforcement of the standard form of policy was the only object of its penalties. Take out the form prepared by the insurance commissioner and to be found in some pigeon hole in his office, and the act is without meaning or effect; it is completely eviscerated.

We do not see how a case could be stated that would show a more complete and unconstitutional surrender of the legislative function to an appointee than that presented by the act of 1891. By its provisions the legislature says in effect to its

appointee, "Prepare just such a policy or contract as you please. We do not care to know what it is. The governor shall have no opportunity to veto it. File it in your own office and we will compel its adoption, whether it is right or wrong, by the punishment of every company officer or agent who hesitates to use it."

We do not take time to examine the voluminous conditions loaded upon the back of a very simple and concise contract of insurance. The assignments of error do not bring them before us for this purpose. The learned judge of the court below gave them careful consideration and he was of opinion that they were unjust and oppressive. Speaking of the form of the standard policy as a whole he said "I look upon it as infamous." Again he said "The conditions put in that policy go beyond almost any policy that ever was exhibited in the courts before. Numerous provisions were put in that the courts had declared void because they were so unjust and inequitable." Speaking of its general character and effect he said: "It seems to be framed in the interest of dishonest companies and insurance brokers and puts an honest insurance company and honest officers of a company at a very great disadvantage."

This is a very serious arraignment of the "standard policy," to which we refer without comment of our own, for the purpose of showing the impolicy of such delegation of legislative power as might make it possible to fasten upon the people of the commonwealth a form of contract, open to such grave objections.

It is not to be supposed that a law really mischievous in its operations could pass both houses of the legislature unchallenged. If by reason of any complication of circumstances this should happen in any given case, then the people have a remaining safeguard in the veto power possessed by the governor. The act of 1891 steered past both legislative discussion and executive veto, and vested in the insurance commissioners the power to fill in its directory provisions, and supply the form of insurance contract it was to enforce, without even the knowledge of the legislature or the governor of a single one of its many provisions that were to be bound by fines and penalties on insurers and insured all over the commonwealth.

Our conclusion is that the act of 1891 is void because clearly unconstitutional. The compulsory nonsuit is set aside and a procedendo awarded.