## UNITED STATES v. OREGON R. & NAV. CO.

### (Circuit Court, D. Oregon.   July 13, 1908.)

### No. 3,161.

CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER—TRANSPORTATION OF LIVE STOCK—28-HOUR LAW.

  Act Cong. June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918), prohibiting carriers from confining stock in transit for a longer period than 28 consecutive hours without unloading for rest, water, and feed for a period of 5 hours, except that, on written request from the owner or person in custody of the particular shipment, the time of consecutive confinement may be extended to 36 hours, is not unconstitutional as a delegation of legislative power to the owner or custodian of the stock shipped during transit.

James Cole, Asst. U. S. Atty.

W. W. Cotton, A. C. Spencer, and James G. Wilson, for defendant.

WOLVERTON, District Judge.   This is an action for the recovery of a penalty for violation of Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918).   The charge is that the defendant company received and loaded upon a car a consignment of 81 hogs, and carried them in continuous transportation, without unloading for feed and rest, for more than 28 hours, all without the written request of the owner, the custodian, or the consignee thereof authorizing an extension of the time of confinement to 36 hours.   The complaint is challenged by a demurrer, and there is presented the single question whether the act under which the action is brought is unconstitutional, as a delegation of legislative power to the owner or custodian of stock shipped or in transit.

The act prohibits common carriers from confining stock while in transit in cars, boats, or vessels for a longer period than 28 consecutive hours, without unloading for rest, water, and feed for a period. of 5 hours, except that, "upon the written request of the owner or person in custody of that particular shipment," the time of continuous confinement may be extended to 36 hours; a penalty being prescribed for each violation of the act.   The act springs from the promptings of humanity to guard against the cruel treatment of animals in their handling and care.   It has a twofold purpose, however:   On the one hand, to prevent cruelty in the relation indicated, and, on the other, to subserve the interests of the owner.   Stock in the course of shipment deteriorates in flesh and weight to an appreciable degree, and, of course, the longer it goes without water, food, and rest, the greater the deterioration.   This imposes a loss upon the owner, and the greater the deterioration or depreciation, the greater the loss.   So that, for the protection of the owner, the Congress has said to the transportation companies that they may hold the stock in continuous travel or carriage, without rest or food, for a period of 36 hours, with

the consent of the owner; otherwise, that they shall not so hold them for more than 28 hours.

It is unusual treatment to confine animals in close quarters at any time, as in the course of transportation, which subjects them to the rocking and swerving of the vehicles in which they are carried. When so confined for any great length of time without rest, food, or water, it needs no elaboration to convince one that the treatment will be attended with cruelty, and the cruelty will increase in severity the longer the treatment is administered. Now, we may reasonably assume that Congress considered that the most humane provision for animals in transportation is that they be fed, watered, and rested once in every 28 hours, but that it would not be attended with undue severity if they should be so fed and rested once in 36 hours only. But the longer continuous carriage being attended with the greater deterioration in flesh and weight of the animals, and the greater loss to the owner, it has said that the carriage may not be continuous for a longer period than 28 hours unless the owner consents, and then for a period not to exceed 36 hours. I say the owner, for the person in custody must be considered to be the agent of the owner. Thus it is that the law simply subserves the two purposes of its enactment; that is, to insure humane treatment of animals while in transportation, and to subserve the interests of the owner or shipper as far as possible in consonance with such treatment.

This exposition of the purposes of the act suffices to dispose of the present controversy. There is, it seems to me, no delegation of legislative power or authority to the owner of the stock shipped. He cannot say whether the law shall be effective or not as he may determine. The law is effective as a humane declaration, whether he act at all or not. But he may waive a detriment to accrue to himself, if he be so inclined, which is clearly not an act of legislation.

The line of authorities relied upon by counsel for defendant in support of their contention has relation principally to the violation of the rules and regulations prescribed by some executive officer of the government, the perpetrators being proceeded against criminally, and such rules and regulations have generally been held to be void, because of an attempted delegation of legislative authority. Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267; United States v. One Package of Distilled Spirits (D. C.) 88 Fed. 856; United States v. Maid (D. C.) 116 Fed. 650; United States v. Blasingame (D. C.) 116 Fed. 654; United States v. Matthews (D. C.) 146 Fed. 306; O'Neil et al. v. Insurance Co., 166 Pa. 72, 30 Atl. 943. These authorities do not aid the research. Neither do I now believe the legislation is dealing with a classification. It is none other than a determination of conditions for the guidance and regulation of shippers and carriers as it relates to the treatment of animals in transportation.

The demurrer will therefore be overruled.