**J. Joel SHERMAN, Petitioner,**

v.

**Linda S. KAISER, Insurance Commissioner of the Pennsylvania Insurance Department, and the Pennsylvania Insurance Department, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 7, 1995.

Decided Aug. 29, 1995.

Amy L. Weber, Department Counsel, for respondents.

James R. Farley, for petitioner.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

PELLEGRINI, Judge.

The Pennsylvania Insurance Department, as respondent, presents a Petition to Open or Vacate a single-judge order of this court entered October 27, 1994, granting summary relief and permanently enjoining the Insurance Department from taking any action against the insurance agent license of J. Joel Sherman for conduct related to a Market Conduct Examination Report of Metropolitan Life Insurance Company (MetLife). In the event the judgment was opened or vacated on its petition, the Department also filed a Motion to Dismiss the Petition for Review for Mootness due to the replacement of Cynthia Maleski, Insurance Commissioner at the time an order to show cause was issued by the Insurance Department against Sherman and at the time of Sherman's Petition for Review in this court, by Linda S. Kaiser, the current Insurance Commissioner.

On August 18, 1993, a Market Conduct Examination[1] of MetLife was initiated by the Insurance Department.[2] The scope of the Department's examination of MetLife included the agent's sales practices in selling replacement policies and misrepresenting the intent and benefits of policies. As the Department proceeded with its examination, MetLife began to dismiss sales representatives and management personnel in the geographical areas under investigation. MetLife fired Sherman on October 27, 1993. The Insurance Department concluded its investigation on December 27, 1993. After being terminated by MetLife, Sherman obtained employment as a sales representative for Jefferson–Pilot Life Insurance Company and Sun Life of Canada.

On February 11, 1994, the Insurance Department formally issued a Market Conduct Examination Report on MetLife, containing findings and conclusions as adopted from the report of the examiners by Deputy Commissioner Buzby. With respect to agent activities the report mentioned Sherman by name and concluded that he and other agents had acted deceptively and had misrepresented insurance policies to customers. One of the deceptive practices, known as "churning," is described as persuading a consumer to replace an existing policy without advising the consumer that the new policy is more expensive or less beneficial in order to increase an agent's commissions. On March 4, 1994, the Governor of the Commonwealth of Pennsylvania, Robert P. Casey, and Commissioner Maleski announced that the Insurance Department had fined MetLife $1.5 million for misleading sales practices. Governor Casey issued a press release which quoted Commissioner Maleski as stating "the evidence of MetLife agents' rampant misrepresentations to the public and the company's tacit approval of such tactics is indisputable." (Exhibit E to Sherman's Petition for Review at 3).

The Insurance Department filed on June 29, 1994 an Order to Show Cause why it should not revoke Sherman's insurance agent license for violations of the Insurance Department Act, the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, *as amended*, 40 P.S. §§ 1171.1—1171.15, and the regulations.[3] The order alleged Sherman had violated the statutes and regulations by "churning" policies and using deceptive sales practices, such as failing to deliver a refund for over a year. The order stated that Sherman had thirty days to respond and that if he responded, the Insurance Department would hold a formal administrative hearing. Following the order to show cause, a press release from the Insurance Department stated that Sherman had been accused of "engaging in a pattern of numerous and continuous unfair and deceptive practices, evidencing total disregard for clients' interests, and sacrificing clients' financial and emotional well-being for [his] own financial gain." (Sherman Exhibit F at 1).

■ In response to the order to show cause, Sherman filed a Petition for Review in the nature of a complaint for injunctive relief in this court. Sherman also filed an Application for Special Relief in the nature of a Preliminary Injunction. Sherman alleged in his complaint that the Department violated his procedural due process rights by precluding the possibility of a fair and impartial tribunal. In particular, he alleged that Commissioner Maleski, by issuance of the market conduct report and by her comments quoted in the press release, had prejudged him with

---

1. A Market Conduct Examination must be conducted by the Insurance Department once every five years, or more frequently as the Department considers appropriate, and is intended to verify through the books, records, accounts and documents of the company the financial condition of the insurance company and to ascertain whether it has complied with the statutes and regulations applicable. Section 903 of The Insurance Department Act of 1921 (Insurance Department Act), Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. § 323.3.

2. In relation to the Market Conduct Examination of MetLife, Commissioner Maleski issued an order pursuant to Section 905(c) of the Insurance Department Act, 40 P.S. § 323.5(c), making Thomas S. Buzby, Deputy Insurance Commissioner, her designee to enter an order regarding MetLife, after fully considering the market conduct report and any rebuttals.

3. In a letter dated January 26, 1994, the Insurance Department officially notified Sherman that he was the subject of an enforcement investigation.

respect to the incidents described in the order to show cause.[4]

On August 10, 1994, a hearing was held before a single judge of this court on Sherman's request for a preliminary injunction. On that same day, Commissioner Maleski appointed Deputy Commissioner William S. Taylor to act as the adjudicator in the license revocation proceedings against Sherman.[5] In a single-judge opinion, the court denied the preliminary injunction because it would be ineffective to restore the parties to the status quo prior to the alleged wrongful conduct. However, the opinion stated that the Market Conduct Report and Commissioner Maleski's statement demonstrated that Sherman was in immediate danger of losing his license due to prejudgment by the Commissioner and could not receive a fair and impartial tribunal. The court also stated that Commissioner Maleski lacked the authority to delegate her adjudicatory responsibility.

After the court's decision on the preliminary injunction, Sherman filed an Application for Summary Relief on his Petition for Review and sought a permanent injunction to stop the administrative action against him. The Insurance Department filed preliminary objections to the Petition for Review and an answer to the Application for Summary Relief. In separate single-judge opinions filed on October 27, 1994, this court first denied the Insurance Department's preliminary objections and then granted Sherman summary relief. The court enjoined the Insurance Department from proceeding in the administrative action against Sherman and ordered it to strike Sherman's name from the Market Conduct Report and to vacate the order to show cause. Because the injunction prohibits Department action against Sherman's license, Sherman is perpetually immune from any discipline for deceptive sales practices and misrepresentations to the consumers while employed by MetLife that could be proven by the Department. As a result, he continues to hold an insurance agent license and can sell insurance policies to the public.

■ After the permanent injunction was entered, the Department filed this Petition to Vacate or Open Judgment from the October 27, 1994 order granting summary relief to Sherman and requested *en banc* argument. If this court decided to vacate or open judgment, the Department filed an anticipatory Motion to Dismiss the Petition for Review for Mootness arguing the bias attributed to Commissioner Maleski was irrelevant due to Commissioner Maleski's resignation and Commissioner Kaiser's appointment to the position and the request for injunctive relief was moot.[6]

**4.** "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). This due process right to a fair and impartial tribunal applies to administrative proceedings as well as to courts. *See, e.g., Roberts v. Andrus,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977).

**5.** Deputy Commissioner Taylor is the head of the Office of Liquidations and Rehabilitations of insurance companies.

**6.** Also before us are the Insurance Department's application to amend the caption by substituting Commissioner Linda S. Kaiser for Cynthia Maleski, and an application for leave to amplify the record by entering into the record documents establishing Commissioner Maleski's resignation and Commissioner Kaiser's appointment and confirmation or, in the alternative, that this court take judicial notice of those facts.

As to the request to amplify the record, the Insurance Department argues that Commissioner Kaiser was not involved in any way in the prior examination or report of MetLife and there are no allegations of bias on her part. In an alterna-

tive to opening the record, the Department asks that we take judicial notice of the facts asserted. Because Commissioner Kaiser's appointment and confirmation are official actions by the Governor and the Senate of this Commonwealth, and because both those facts and Commissioner' Maleski's resignation were publicized political facts we will take judicial notice of these facts. *See generally In the Interest of D.S.,* 424 Pa.Superior Ct. 350, 622 A.2d 954 (1993) (judicial notice may be taken of indisputable fact; a fact is indisputable if it is so well established as to be a matter of common knowledge); 8 Standard Pennsylvania Practice 2d § 49:68, § 49:70. Therefore that motion is denied.

As to the application to amend the caption of this case, under the Rules Appellate Procedure when a public officer is named as a party in her official capacity and resigns during the pendency of the matter, the successor is automatically substituted as a party. Pa.R.A.P. 502(c). In order to effectuate the substitution, we grant the motion to amend.

■ An application for summary relief filed pursuant to Pa.R.A.P. 1532(b) [7] is generally the same as a motion for peremptory judgment filed in the court of common pleas. *See* Official Note to Pa.R.A.P. 1532(b) which provides: "Subdivision (b) of this rule is a generalization of Pa.R.C.P. No. 1098 (peremptory judgment)".[8] Summary relief may be granted only where the right thereto is clear. Pa.R.A.P. 1532(b). Where there are material issues of fact in dispute or if it is not clear that the applicant is entitled to judgment as a matter of law, the application will be denied. *Marshall v. Board of Probation and Parole,* 162 Pa.Commonwealth Ct. 256, 162 Pa.Cmwlth. 256, 638 A.2d 451 (1994). *See also* Darlington, McKeon, Schuckers & Brown, 1 Pennsylvania Appellate Practice § 1532:7 (1995). On a petition to vacate or open the judgment of summary relief, the Rules of Appellate Procedure provide no standard of review, but because Pa.R.A.P. 1532(b) specifically refers to Pa.R.C.P. No. 1098, we believe the same scope of review applies.[9] Therefore, this court may open or vacate a judgment if the movant establishes good cause. Pa.R.C.P. No. 1098; *Washowich v. McKeesport Municipal Water Authority,* 94 Pa.Commonwealth Ct. 509, 513, 503 A.2d 1084, 1086 (1986). Moreover, it is an abuse of discretion not to open a judgment where there has been a misapplication or misinterpretation of the law. *Id. See also Borough of Plum v. Tresco,* 146 Pa.Commonwealth Ct. 639, 606 A.2d 951 (1992).

The Insurance Department contends that the order granting summary relief should be vacated because the holding that the Commissioner must adjudicate every case and cannot delegate that responsibility is an error of law. The Department argues that Section 213 of the Administrative Code of 1929 (Administrative Code), Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 73, authorizes the Commissioner to transfer the authority to adjudicate an administrative proceeding to a deputy. It argues that even if the Market Conduct Report and her statement establish that Commissioner Maleski was biased, an adjudication by either the Deputy Commissioner Taylor, to whom Commissioner Maleski delegated her authority, or by new Commissioner Kaiser would eliminate even the appearance of bias. In response, Sherman contends that the Commissioner cannot delegate her adjudicatory powers and that he established all of the necessary requirements for a permanent injunction. Sherman also argues that the entire Insurance Department is biased against him and cannot provide a fair and impartial tribunal.

I.

■ The first issue before us then, is whether the prior judgment of this court should be opened because it erred in determining that the Insurance Commissioner cannot delegate her adjudicatory authority to a Deputy Commissioner. Section 213 of the Administrative Code provides in pertinent part:

> The Governor shall appoint ... deputy heads of administrative departments, ... *who may, at any time, exercise such of the powers and perform such of the duties of the head of his department as may be prescribed by the head of his department*: Provided, however, That any such deputy shall not have the right to exercise any power or perform any duty which the Constitution of the Commonwealth of Pennsyl-

---

7. Pa.R.A.P. 1532(b) provides:
    At any time after the filing of a petition for review in an appellate or original matter the court may on application enter judgment if the right of the applicant thereto is clear. A party against whom judgment is entered under this subdivision may apply to open or vacate the judgment within 30 days after entry....

8. Peremptory judgment is governed by Pa.R.C.P. No. 1098 which provides:
    At any time after the filing of the complaint, the court may enter judgment if the right of the plaintiff thereto is clear, but the judgment may be opened upon cause shown....
    Unlike a motion for peremptory judgment in the trial court which is only proper in a mandamus proceeding, an application for summary relief filed pursuant to Pa.R.A.P. 1532(b) is proper in any proceeding brought in our appellate or original jurisdiction.

9. Both parties agree that this is the standard of review for this court.

vania requires the head of his department personally to perform. . . .

71 P.S. § 73 (emphasis added). The clear language of the statute provides that duties of the head of a department, the Commissioner, may be delegated to deputy heads of that administrative department. The only limitation on the delegation of authority is where the *Constitution* states that the power or duty of the department head must be performed personally by that department head. There is no allegation that the Constitution prohibits the delegation of the Insurance Commissioner's adjudicatory functions. Although it is the Commissioner who is given the authority to investigate, prosecute and adjudicate enforcement actions against agents,[10] the statute giving the Commissioner that authority in no way contradicts Section 213 of the Administrative Code which gives the Commissioner the ability to delegate her authority to a deputy.[11]

Sherman argues that the Supreme Court's decision in *Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1975), places a constitutional restriction on an agency head's ability to delegate its powers and duties. He contends that the statute mandates that, because the Commissioner has manifested bias through the exercise of the prosecutorial function, his constitutional due process rights have been violated beyond repair and any subsequent adjudication would be tainted. In *Dussia,* a member of the Pennsylvania State Police sought a permanent injunction against the Commissioner of the State Police from proceeding with a court-martial against him because the applicable statute of the Administrative Code created an unconstitutional commingling of functions in the Police Commissioner. The statute as implemented in the

regulations required the Police Commissioner to both ultimately adjudicate the court-martial and determine when a court-martial board should be appointed to adjudicate a charge. The Supreme Court found that this was an unconstitutional commingling of functions in the Police Commissioner and held that the regulation vesting the prosecutorial function in the Police Commissioner was void. Because the "offensive" prosecutorial function had already been exercised by the Police Commissioner, a permanent injunction was granted to prohibit the Police Commissioner from also making the judicial decision on the charges. *Id.* at 166, 351 A.2d at 675. *Dussia* is inapplicable to this case because what is at issue here is not an improper commingling but what steps can the Insurance Commissioner take to insure that Sherman receives a fair hearing by delegating her responsibilities to an "untainted" individual. Moreover, nothing in *Dussia* addressed the ability of the Police Commissioner under Section 213 to delegate his adjudicatory authority.

A case that is applicable to the issue of delegation is *Stone & Edwards Insurance Agency v. Department of Insurance,* 161 Pa.Commonwealth Ct. 177, 636 A.2d 293 (1994), involving an issue of commingling by the Commissioner under the Unfair Insurance Practices Act. Involved in that case was whether the commingling of prosecutorial and adjudicatory functions in the statute could be cured by the Commissioner in order to provide sufficient due process to the insurance agents and company. We held that whether a person's due process rights are violated is not determined by whether the statute facially allows commingling of func-

---

10. For example, Section 8 of the Unfair Insurance Practices Act, 40 P.S. § 1171.8 provides:

 (a) If, as a result of investigation, the Commissioner has good cause to believe that any person is violating any provision of this act, the Commissioner shall send notice of the violation by certified mail to the person believed to be in violation. . . .

 . . . .

 (e) Following the hearing, the Commissioner shall issue a written order resolving the factual issues presented at the hearing and stating what remedial action, if any, is required of the person charged. . . .

11. In *J.C. Penney Casualty Insurance Co. v. Department of Insurance,* 43 Pa.Commonwealth Ct. 360, 362 n. 1, 402 A.2d 558, 559 n. 1 (1979), we stated that the authority given to the Commissioner in the Unfair Insurance Practices Act to investigate, prosecute and adjudicate enforcement actions against agents is a delegation to the Insurance Department as a whole rather than only to the Commissioner. Even though the statute gives the authority directly to the Commissioner, by necessity those functions are to be separated within the Insurance Department. *Id.*

tions but instead by how the statute is implemented by the agency and the process that the person will receive. *Id.* at 188–89, 636 A.2d at 299. This court determined that, although the statutory procedure would commingle the functions in the Commissioner, the Commissioner may cure the bias caused by a commingling of functions by creating a "wall of division" between those persons responsible for prosecution and those responsible for adjudication. In order to create this "wall of division," we held that the Commissioner is authorized to delegate part of her functions to a Deputy Commissioner under Section 213 of the Administrative Code. *Id.*, at 187–88 and n. 19, 636 A.2d at 298–99 and n. 19.[12] Here the Commissioner delegated her adjudicatory functions to Deputy Commissioner Taylor who is the head of the Office of Liquidations and Rehabilitations which has no responsibility for enforcement actions against agents. Although in *Stone & Edwards* the Commissioner delegated her prosecutorial functions, nothing within the case limits the Commissioner's power to delegate her adjudicatory functions in the same manner, especially when Section 213 expressly authorizes such a delegation.[13] Accordingly, we hold that the Commissioner of the Insurance Department may delegate her adjudicatory authority under Section 213 of the Administrative Code. Because the prior judgment erred in determining as a matter of law that the Commissioner could not delegate her adjudicatory authority, we vacate the prior judgment of this court granting summary relief.

## II.

■ Sherman argues, however, that not only Commissioner Maleski but the entire Department has prejudged him and is unable to provide a fair and impartial tribunal. Sherman's evidence of prejudgment is limited to the Market Conduct Report and Commissioner Maleski's statement in the press release issued to the public at the same time as the report. The Market Conduct Report was drafted by the Market Conduct Division of the Department and the order was issued by Thomas S. Buzby, Deputy Insurance Commissioner of the Office of Consumer Services and Enforcement, as designated by Commissioner Maleski. There is no allegation that Deputy Commissioner Taylor, to whom Commissioner Maleski delegated her functions as adjudicator in the license revocation proceeding against Sherman, who heads the Office of Liquidations and Rehabilitations, is biased against Sherman. Nor is there any allegation that in his duties he would have had any opportunity to participate in the Market Conduct Examination or any conclusions made about Sherman. Sherman has not raised any evidence on the inability of Deputy Commissioner Taylor to provide a fair and impartial tribunal.

Moreover, the inclusion of Sherman's name in the Market Conduct Report is not indicative of a bias that is so invasive to the Department as to eliminate all personnel from ever participating in an adjudicative process focused on the allegations against Sherman. Any actual bias or the appearance of bias is only as to those persons responsible for the conclusions made and stated in the Market Conduct Report. Under such circumstances, there is no basis to conclude that Commissioner Maleski's delegation of adjudicatory authority to Deputy Commissioner Taylor is unlawful as violative of Sherman's due process rights and Sherman's Application for Summary Relief is denied.

■ Even if Sherman presented evidence of bias as to all personnel of the Insurance Department, we would be required to allow the adjudication to go forward by application of the Rule of Necessity. The Rule of

---

12. Without addressing the issue of delegation, the Supreme Court affirmed this court's decision in *Stone & Edwards*, 538 Pa. 276, 648 A.2d 304 (1994).

13. That the adjudicatory powers may be mandatory and the investigatory and prosecutory functions are discretionary is immaterial. Even where the adjudicatory power is mandatory, i.e. once a hearing is held under Section 8(e) of the Unfair Insurance Practices Act, 40 P.S. § 1171.8(e), the mandatory nature of that function does not require that it be exercised only by the Commissioner. Instead it requires simply that a decision on the hearing be made without contradicting the Commissioner's right in Section 213 of the Administrative Code to delegate the power to make that decision.

Necessity is a principle at common law that requires that a judge with a personal interest in a case must hear that case if it cannot be heard otherwise. *See Philadelphia v. Fox,* 64 Pa. 169, 185 (1870). Therefore, if all of the members of a tribunal are subject to recusal, the tribunal must consider the case despite the personal interest or bias of the members of the tribunal because otherwise the public and the litigants would be denied a decision in the matter. *United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). *See also Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985).[14] If all the members of the Insurance Department responsible for adjudication of license revocations were biased against Sherman, the Commissioner must still provide for adjudication of the revocation proceeding in the first instance because the Department is statutorily given jurisdiction over those proceedings.

### III.

█ Having vacated the prior judgment granting summary relief, the case is now open and we may address the Insurance Department's Motion to Dismiss for Mootness. In that Motion, the Department argues that because Commissioner Kaiser has been appointed and confirmed as the new Commissioner and there are no allegations of bias against her, Sherman's complaint that a fair and impartial tribunal cannot be provided by the Insurance Commissioner is moot. Sherman argues that even though Commissioner Maleski is no longer responsible for the adjudication due to her resignation, the bias remains because Commissioner Kaiser is bound by the official acts of the previous Insurance Commissioner. We disagree. Bias, by definition, is personal, relating to the mental state or decision of the decision-maker,[15] and cannot remain with the office of the Insurance Commissioner. Although the appointment of Commissioner Kaiser does not eliminate the conclusions of the Market Conduct Report, she is not bound by those conclusions, nor can we presume she would feel compelled to determine the charges in the same way because the charges were not brought by her or under her supervision and she is not affected by the bias in Commissioner Maleski's statement in the press release. None of Sherman's allegations of bias or prejudgment would incriminate Commissioner Kaiser's ability to fairly adjudicate the charges against him. Having vacated the judgment of summary relief, we dismiss Sherman's Petition for Review because the issues raised are moot due to the appointment of a new Insurance Commissioner.

In conclusion, we vacate the prior judgment of this court because the Commissioner had the power to delegate her adjudicatory functions under Section 213 of the Administrative Code, and Sherman's request for a summary relief is denied. Moreover, Sherman's Petition for Review is dismissed as moot and the order to show cause may proceed.

### ORDER

AND NOW, this 29th day of August, 1995, it is ordered that:

1. The Pennsylvania Insurance Department's Petition to Open or Vacate the judgment of this court entered October 27, 1994 is granted and that order granting summary relief and enjoining further proceedings in the administrative agency against J. Joel Sherman, as a licensee, is vacated.

2. The Respondent's Motion to Dismiss the Petition for Review in the nature of a

---

14. For a full analysis of the Rule of Necessity, *see* the Superior Court's decision in *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 330 Pa.Superior Ct. 420, 433–34, 479 A.2d 973, 979–80 (1984).

15. Black's Law Dictionary 147 (5th ed. 1979) defines "bias" as "[A]n inclination; bent; prepossession; a preconceived opinion; a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction. To incline to one side. Condition of mind, which sways judgment and renders judge unable to exercise his functions impartially in particular case. As used in law regarding disqualification of judge, refers to mental attitude or disposition of the judge toward a party to the litigation, and not to any view that he may entertain regarding the subject matter involved."

complaint for injunctive relief is granted. The order to show cause may proceed and the Commissioner of the Insurance Department or her delegate may render a final adjudication in the case.

3. The Pennsylvania Insurance Department's motion to amend the caption to replace Linda S. Kaiser for Cynthia Maleski, as Insurance Commissioner, is granted. The motion to amplify the record is denied.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. I do not believe that this court's October 27, 1994 single-judge opinion misapplied or misinterpreted the law with respect to the Insurance Commissioner's (Commissioner) ability to delegate adjudicative powers; indeed, I do not believe that Section 213 of the Administrative Code [1] allows the Commissioner to delegate her adjudicative powers where, as here, the Commissioner has already publicly proclaimed her judgment on the matter. Moreover, even if the Commissioner *could* delegate her adjudicative powers, I do not believe that, in this case, the Commissioner would thereby avoid the appearance of bias. Thus, I would deny the Pennsylvania Insurance Department's (Department) Petition to Vacate or Open this court's October 27, 1994 single-judge decision.

I.

The Majority asserts that the Commissioner has authority to delegate her adjudicative powers under Section 213 of the Administrative Code. I disagree.

Initially, I concede that, on its face, Section 213 seems to permit the head of an administrative department to delegate any power or duty of the agency head to a deputy commissioner, absent a constitutional requirement that the agency head personally exercise the power or perform the duty. However, I

believe that our Supreme Court in *Dussia v. Barger,* 466 Pa. 152, 351 A.2d 667 (1975), placed an additional constitutional restriction on an agency head's ability to delegate its powers and duties.

In *Dussia,* our Supreme Court considered whether a regulation implementing Section 711 of the Administrative Code, 71 P.S. § 251, created an impermissible commingling of functions in the Police Commissioner. The Court, as a preliminary matter, noted that Section 711 of the Administrative Code *mandates* that the Police Commissioner make the ultimate decision of guilt or innocence in proceedings against State Police personnel. The Court then examined whether an implementing regulation properly delegated the entire prosecutorial role of the Police Commissioner to the court-martial board. The Court determined that the regulation failed to do so. Thus, because the Police Commissioner retained some of his prosecutorial power and because he could not escape his statutorily mandated role as ultimate adjudicator, the Court held that there was an impermissible commingling of functions.

The Court in *Dussia* then had to consider an appropriate remedy for such a violation of due process rights. The Court stated that where a *statute mandates* that a commissioner make the ultimate decision in an adjudication and the commissioner has manifested bias through the exercise of the offensive prosecutorial function, constitutional due process rights have been violated beyond repair and *any* subsequent judicial decision would be tainted. The Court, therefore, granted a *permanent injunction* prohibiting any further court-martial proceedings. Unlike the Majority here, the Court did *not* decide that the Police Commissioner could avoid the appearance of bias by delegating his adjudica-

---

1. Section 213 of The Administrative Code of 1929 (Administrative Code), Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 73, states in pertinent part:

The Governor shall appoint ... deputy heads of administrative departments ... who may, at any time, exercise such of the powers and perform such of the duties of the head of his

department as may be prescribed by the head of his department: Provided, however, That any such deputy shall not have the right to exercise any power or perform any duty which the Constitution of the Commonwealth of Pennsylvania requires the head of his department personally to exercise or perform.

tive powers to a deputy under Section 213 of the Administrative Code.[2]

I believe that the same remedy is necessary here where the Unfair Insurance Practices Act (UIPA)[3] mandates that the Commissioner make the ultimate decision in an adjudication[4] and where the action of the Commissioner is even more egregious than that of the Police Commissioner in *Dussia*. Indeed, the Commissioner here has not merely manifested bias through exercise of the offensive prosecutorial function; she has openly pre-judged the case for which she is the ultimate and sole adjudicator. Thus, as in *Dussia*, I believe that constitutional due process rights have been violated beyond repair and *any* subsequent judicial decision would be tainted.

The Majority states that *Dussia* is not applicable here because it is a commingling of functions case that does not address the delegation of powers. (Majority op. at 226.) I disagree. As noted above, the issue in *Dussia* was whether a regulation properly delegated the entire prosecutorial role of the Police Commissioner to the court-martial board, thereby avoiding an impermissible commingling of functions. Although the Court in *Dussia* did not use the magic word "delegate" to describe the regulation's purpose, it is evident from the regulation itself

that its goal was to delegate some of the Police Commissioner's prosecutorial responsibility to the court-martial board.[5] Thus, I cannot accept the Majority's attempt to distinguish *Dussia* on that basis.

Instead of *Dussia*, the Majority would apply *Stone & Edwards Insurance Agency v. Department of Insurance*, 161 Pa.Commonwealth Ct. 177, 636 A.2d 293 (1994), another commingling of functions case dealing with the delegation of prosecutorial powers. (Majority op. at 226–27.) Unlike the Majority, I do not believe that *Stone and Edwards* is applicable here.

I believe that both *Dussia* and *Stone & Edwards* are commingling of functions cases concerning the proper delegation of prosecutorial powers and that they are entirely consistent with one another. In *Dussia*, our Supreme Court determined that a regulation did *not* properly delegate the entire prosecutorial role to the Police Commissioner; in *Stone & Edwards*, this court determined that the Commissioner *did* properly delegate all prosecutorial functions to a deputy. Thus, in *Dussia*, the Court held that there was an appearance of bias because of an impermissible commingling of functions; whereas, in *Stone & Edwards*, we held that there was *not* an appearance of bias because of an

2. The Majority asserts that even if everyone in the Department was biased against Sherman because of the Commissioner's prejudgment of Sherman, the adjudication would nevertheless have to go forward under the Rule of Necessity, a common law principle requiring that a judge with a personal interest in a case must hear the case if it cannot be heard otherwise. (*See* Majority op. at 227–28.) However, our Supreme Court in *Dussia* did not rely on the Rule of Necessity to fashion a remedy, and I would not do so here.

3. Act of July 22, 1974, P.L. 589, *as amended*, 40 P.S. §§ 1171.1–1171.15.

4. Section 1171.8(e) of the UIPA, 40 P.S. § 1171.8(e) (emphasis added), states:

(e) Following the hearing, the *Commissioner* shall issue a written order ... [and] shall send a copy of the order to those persons participating in the hearing.

Section 711(b)(2) of the Administrative Code, 71 P.S. § 251(b)(2) (emphasis added), considered by our Supreme Court in *Dussia*, states in pertinent part:

A written notice of any decision of the *commissioner* ... shall be sent ... to the enlisted member ... after the hearing is actually concluded.

Based on the language in Section 711 of the Administrative Code, the Court in *Dussia* determined that the commissioner could not relinquish the role of ultimate adjudicator. Certainly the language in Section 1171.8 of the UIPA is equally strong, if not stronger, in requiring that the Commissioner ultimately decide cases under the UIPA.

5. The regulation provided, in part, as follows:

1. A Disciplinary Board ... shall be appointed by the [Police Commissioner] to review recommendations for Court-Martial....

2. *The Board shall convene at the direction of the [Police Commissioner]* and shall be responsible to him for conducting an objective review of all cases that he may refer to it.

. . . .

4. *The Board shall function in an advisory capacity only.*

*Dussia*, 466 Pa. at 161, 351 A.2d at 672 (emphasis in original).

impermissible commingling of functions. In *Dussia*, the Court had to fashion an appropriate remedy for the appearance of bias where the statute mandated that the Police Commissioner serve as ultimate adjudicator; in *Stone & Edwards*, this court did *not* have to consider a remedy because there was no appearance of bias. Here, this court must consider an appropriate remedy for the Commissioner's bias where Section 1171.8 of the UIPA, like Section 711 of the Administrative Code, mandates that the Commissioner serve as ultimate adjudicator. Clearly, *Dussia* is the only one of the these two cases to give us guidance in that regard. Thus, if only one of these cases is applicable here, it is *Dussia*, not *Stone & Edwards*.

Indeed, in *Stone and Edwards*, this court decided that Section 213 of the Administrative Code authorizes the Commissioner to delegate her *investigatory* and *prosecutory* functions which, unlike her adjudicatory functions, are discretionary in nature. We did *not* hold that the Commissioner could delegate her adjudicatory function to a deputy. In fact, to so hold would have been contrary to *Dussia*. If anything, our failure in *Stone & Edwards* to hold that the Commissioner could delegate adjudicative powers means, by implication, that the Commissioner may *not* delegate those functions. The Majority, in now holding that the Commissioner can delegate her adjudicatory powers, has failed to follow our Supreme Court's direction in *Dussia*.

---

6. Unfortunately, the Commissioner realized too late that she needed to erect a wall between herself and the ultimate adjudicator to avoid the appearance of bias.

7. In *O'Neil v. American Fire Ins. Co.*, 166 Pa. 72, 78, 30 A. 943, 944 (1895), our Supreme Court considered the constitutionality of the delegation of legislative authority to the commissioner and stated: "The question is not, therefore, one of power over the subject, but of the manner in which the conceded power must be exercised." Likewise, here, even if the Commissioner's ultimate adjudicatory power was a proper subject for delegation, there is still the question of the manner in which the deputy must exercise it.

8. Of course, the problem here is not the mere *appearance* of impropriety; rather, it is the actual bias created by the Commissioner's *prejudgment* of Sherman. In *Stone and Edwards*, this court stated:

## II.

Even if the Commissioner has authority under Section 213 to *appoint a deputy* as ultimate adjudicator, I do not believe that the Commissioner, in this case, could thereby escape the appearance of bias.

If the Commissioner could have delegated her adjudicatory powers here, it would have only been appropriate to do so *before* the Commissioner pronounced judgment. Here, however, the Commissioner did not attempt to delegate the adjudicative function until *after* she reviewed the evidence against Sherman and publicly proclaimed his guilt.[6] By waiting until then to assign ultimate adjudicatory power to a deputy, who stands in her shoes and acts in her stead, the Commissioner has not given anything away but, rather, has retained the power in herself.[7] Indeed, the Commissioner has merely arranged for another to voice what she has already determined. At a minimum, this scenario creates an appearance of impropriety.[8]

The Code of Judicial Conduct[9] states that "[a] judge should disqualify himself in a proceeding in which his *impartiality* might reasonably be questioned...." Canon 3 C of the Code of Judicial Conduct (Code) (emphasis added). Indeed, "[a] judge should ... conduct himself at all times in a manner that promotes public confidence in the integrity and *impartiality* of the judiciary." Canon 2

---

To determine whether there has been a violation of a person's right to due process, what is examined is not the process that is purportedly authorized, but instead, it is the process that the person is actually going to receive.

*Stone and Edwards*, 161 Pa.Commonwealth Ct. at 188–89, 636 A.2d at 299.

9. The Code of Judicial Conduct states:

Anyone, whether or not a lawyer, who is an officer of a judicial system performing judicial functions, including an officer such as a referee in bankruptcy, special master, court commissioner, or magistrate, is a judge for the purpose of this Code....

Code of Judicial Conduct (*see* paragraph entitled "Compliance with the Code of Judicial Conduct"). Because the Commissioner is an officer of a judicial system performing judicial functions, the Code of Judicial Conduct is applicable to her.

A of the Code (emphasis added). In particular, "[a] judge should abstain from public comment about a pending proceeding in any court...." [10] Canon 3 A(6) of the Code. Here, where the Commissioner has made a public comment which cloaks Sherman with guilt rather than innocence, and there is no independent body to act as ultimate adjudicator, *any* subsequent related proceeding against Sherman is impermissibly tainted.

### III.

I realize that the outcome I have suggested prevents any further adjudication on the propriety of Sherman's actions. However, what appears to be justice to the Department in seeking to proceed further against Sherman is, in reality, an injustice to Sherman; [11] indeed, Sherman has already received his "forty stripes" at the hand of the Commissioner. [12] If this court does not let the Commissioner know that it is intolerable to use one's political position to publicly destroy an individual's reputation without regard for that person's due process rights, then such public officials will never learn. Indeed, by choosing to ignore the wrong committed by the Commissioner, this court today has decided to permit any commissioner with adjudicatory powers to openly denounce anyone under investigation for wrongdoing prior to a final adjudication and then, with impunity, delegate those adjudicatory powers after the damage has already been done.

For this reason, it matters not that there is a new commissioner who never manifested the bias of the previous one. [13] The mere substitution of a name in the caption of this case does not negate what the previous Commissioner and the Department did to Sherman; nor can it revitalize the Department's action against Sherman. There is simply no other way to give Sherman relief from the harm he has already suffered than by granting a permanent injunction against any further proceedings against him.

Accordingly, I would deny the Department's Petition to Open or Vacate the October 27, 1994 single-judge order of this court granting summary relief and permanently enjoining the Department from taking action against Sherman.

---

10. Our Supreme Court has addressed the seriousness of this question in *Reilly by Reilly v. SEPTA*, 507 Pa. 204, 224, 489 A.2d 1291, 1301 (1985):

> Questions concerning the fairness, impartiality, or bias of the trial court always affect the administration of justice and can cloak the whole system of judicature with suspicion and distrust. Because recusal requests call into question our ability to mediate fairly, they raise important issues in which the public is concerned. If our courts are perceived to be unfair and biased, our future ability to adjudicate the public's grievances and wrongs will be threatened, because we all lose the one thing that brings litigants into our halls of justice— their trust. Without the people's trust that our decisions are made without ... bias ..., our whole system of judicature will crumble.

11. "One man's justice is another's injustice." Ralph Waldo Emerson, Circles (1841).

12. *Cf.* Deuteronomy 25:2–3, which states:

> [I]f the guilty man deserves to be beaten, the judge shall cause him to lie down and be beaten in his presence with a number of stripes in proportion to his offense. Forty stripes may be given him, but not more; lest, if one should go on to beat him with more stripes than these, your brother be degraded in your sight.

13. In fact, it is only an accident that this proceeding coincided with an election year and, consequently, the appointment of a new commissioner.